Penn Federal Savings and Loan Association of Philadelphia, Appellant, *v.* Tax Review Board of the City of Philadelphia, Appellee.

Argued April 3, 1975, before President Judge BOW-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Richard F. Stern,* with him *Stern, Maxmin & Stern,* for appellant.

*Claudia Kapustin,* Assistant City Solicitor, with her *James M. Penny, Jr.,* Assistant City Solicitor, *Raymond Kitty,* Deputy City Solicitor, and *Sheldon L. Albert,* City Solicitor, for appellee.

OPINION BY JUDGE WILKINSON, JR., April 29, 1975:

Appellant appeals from a decision of the Court of Common Pleas of Philadelphia which affirmed the determination of the Tax Review Board of Philadelphia denying a refund of $43,062.93.[1] There is no dispute as to what took place. A corporation owned a property at 2300

---

1. On oral argument, it was stated that subsequent to filing the refund claim in this amount, appellant placed a claim against the bankrupt taxpayer by whom the taxes normally would have been paid and has received a substantial part repayment from the trustee in bankruptcy. However, there is nothing in the record to indicate that other than the claim of refund for the full amount is being pressed. This may very well be for the reason that either all of the tax was paid in error here, or none was.

Walnut Street in Philadelphia, the taxes on which, in 1972, were $43,062.93. An individual who was identified with the corporation and who had his office in the corporation building owned a property at 220 Rittenhouse Square in the same city. The individual had placed a mortgage to appellant on 220 Rittenhouse Square, properly giving his business address as 2300 Walnut Street. Following what was apparently a practice to pay taxes on real estate on which it held a mortgage and to charge the account of the mortgagor, appellant requested the city to supply it with the amount of the taxes on 2300 Walnut Street, the mailing address of the mortgagor rather than the address of the mortgaged property. The amount of the tax was properly supplied. Appellant paid the taxes in June of 1972.[2]

In November of 1972, appellant discovered its error and filed for a refund. It is conceded by all that taxes, once paid, may not be refunded absent statutory authority. *Calvert Distillers Corporation v. Board of Finance and Revenue,* 376 Pa. 476, 103 A.2d 668 (1954) ; *Wilson v. Philadelphia School District,* 328 Pa. 225, 195 A. 90 (1937) ; *Hazleton National Bank v. Commonwealth of Pennsylvania,* 10 Pa. Commonwealth Ct. 366, 308 A.2d 195 (1973).

The statutory authority relied upon by appellant here is Section 19-1703(1)(a) of the Philadelphia Code of Municipal Ordinances, which provides:

"The Department of Collections may grant a refund, in whole or in part, upon determination that a

2. Actually, appellant sent one check for $48,370.34 which was explained by its assistant secretary as including the taxes due on other property, the mortgages on which were held by appellant. The city does not keep a record of who pays taxes, but because the cancelled check for $48,370.34 bore markings on the back which coincided with the machine markings on the receipt, the supervisor of the revenue section of the Department of Collections testified that in his opinion there was a strong probability of payment by appellant.

tax, water or sewer rent, license fee or other charge, interest or penalty, or any part thereof, has been paid under mistake of law or fact, or under an invalid law."

The lower court sustained the decision of the Tax Review Board to deny the refund on two grounds: (1) the authority granted the Board to refund was discretionary and it had not abused its discretion; and (2) appellant failed to establish that the "tax . . . has been paid under mistake of law or fact, or under an invalid law," within the meaning of Section 19-1703(1)·(a) of the Philadelphia Code. We need not decide whether the ordinance's use of the permissive language "may grant" gave the Tax Review Board unlimited discretion and, if so, whether such discretion without standards would render the statute unconstitutional. *See Hotel Casey Company v. Ross,* 343 Pa. 573, 23 A.2d 737 (1942). Interestingly enough, if this argument of appellant prevailed and we declared the ordinance unconstitutional for thus giving the Tax Review Board unlimited discretion, nevertheless the denial of the refund would have to be sustained, for then appellant would have no ordinance under which to claim.

We affirm the lower court on its second ground, *i.e.,* appellant has not shown a mistake of fact within the meaning of the ordinance.[3]

The history of the refund of taxes by municipalities is ably set forth in Formal Opinion No. 109 of the City Solicitor of Philadelphia, dated March 24, 1954. City Solicitor Freedman, later Judge FREEDMAN of the United States District Court and of the United States Circuit Court of Appeals, concludes, citing the various statutes and ordinances dealing with refunds over the years:

"In short, it was the intention of the Council that any moneys paid by a taxpayer to the City of Philadelphia which the City has no right to retain, should

---

3. Appellant readily admits there was no mistake of law and never argued that the tax was paid under an invalid law.

be refunded to the taxpayer upon his application, regardless of whether the payment was initially made erroneously or inadvertently, or whether or not it had been paid under protest."

It seems to us that Judge FREEDMAN here, as he usually did, went to the nubbin of the matter. It was to correct the injustice of the City's retaining funds paid as taxes that were not due the City, either because of a mistake of fact or law, or an invalid law, which cried for correction by this ordinance and which it corrected. In every case cited by appellant and in every case we have been able to find, where a refund has been granted, the tax itself was not due. Here, on the contrary, admittedly the tax was due. Here, within the meaning of the ordinance, appellant has not made a mistake, vis-a-vis, the tax, its amount, or the property on which it was being paid. Its only mistake was its own "in house" authority from the taxpayer to pay the tax.

In *Hotel Casey, supra,* extensively quoted by appellant in its brief, Judge PARKER, speaking for the court, stated:

". . . It would seem both illogical and unreasonable to assume that, when the legislature attempted to correct a rigor of the law that caused an injustice and in so acting made it the duty of one of its fiscal agents to determine whether a tax had been collected *to which the State was not rightfully or equitably entitled* and made specific provision for a refund or credit in the event of such a finding, it intended only such illusory relief as would leave the granting of the refund to the unlimited discretion of the agency."

343 Pa. at 579, 23 A.2d at 740. (Emphasis supplied.) Here, clearly the City is rightfully and equitably entitled to the tax. On oral argument, reference was made to the proper taxpayer-corporation being bankrupt at the time the mistake was discovered by appellant. There is not one scintilla of evidence that the proper taxpayer-corporation was in bankruptcy at the time the tax was paid. Indeed,

quite the contrary can be inferred from the record. A check had been received by the City on April 20, 1972, from the taxpayer-corporation but was returned for insufficient funds. If it had been in bankruptcy at that time, it seems unlikely that the corporation would have been issuing checks. Further, we quote from the record:

"MR. SCHOFIELD: Now, I'd like to offer this, that I understand that the Daroff firm is in bankruptcy and because of that, the City is in a difficult position, if this refund is granted, then of course the tax on the Daroff property would be reinstated, but now that they are in bankruptcy, the City could not file, if I understand it correctly, a lien to enforce collection, due to this mistake which Penn Federal made, the City is in a bad position."

While, in our view, it is not controlling whether the proper taxpayer-corporation was in bankruptcy at the time of the voluntary payment by appellant, certainly if it were not and went into bankruptcy prior to the claim for refund, as the above implies, surely no theory of equity could be advanced by appellant.

Affirmed.