Thomas A. Leonard and Kathleen Leonard and Graveley Roofing Corporation, Petitioner v. Richard L. Thornburgh, Governor, Commonwealth of Pennsylvania, and James I. Scheiner, Secretary of Revenue, Commonwealth of Pennsylvania, and William J. Green, Mayor, City of Philadelphia, and Joseph W. Brown, Director of Finance, City of Philadelphia, and Eugene L. Cliett, Jr., Revenue Commissioner, City of Philadelphia, Respondents.

Argued March 13, 1984, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR., CRAIG, MAC-PHAIL, BARRY and COLINS.

*Thomas A. Leonard,* with him, *James P. Leonard* and *Steven L. Friedman* and *Edmunds J. Brokans, Dilworth, Paxson, Kalish and Kauffman,* for petitioners.

*Maura A. Johnston,* Deputy Attorney General, with her, *Robert Coyne,* Deputy Attorney General, *Allen C. Warshaw,* Deputy Attorney General, Chief of Special Litigation, *LeRoy S. Zimmerman,* Attorney General, and *Richard J. Welsh,* for respondents, Richard L. Thornburgh, Governor and James I. Scheiner, Secretary of Revenue, Commonwealth of Pennsylvania.

*Barbara W. Mather,* City Solicitor, with her, *Jill A. Douthett,* Divisional Deputy City Solicitor, *John M. Myers,* Deputy City Solicitor, *Janet S. Holcombe,* Assistant City Solicitor, and *Pamela L. Perry,* Chief Assistant City Solicitor, for respondents, Green, Brown and Cliett, Jr.

*Charles W. Bowser,* with him, *Kevin William Gibson, Pechner, Dorfman, Wolffe, Rounick & Cabot,* for Amicus Curiae, City Council of Philadelphia.

*Ronald Witkowski, Montgomery, McCracken, Walker and Rhoads,* for Amicus Curiae, Non-Resident Taxpayers Association.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., May 31, 1984:

Kathleen Leonard and Secretary of Revenue James I. Scheiner each have filed cross-motions for summary judgment in this action where at issue is the constitutionality of Section 359(b) of the Tax Reform Code of 1971,[1] the so-called Philadelphia Non-Resident Wage Tax Cap, and Philadelphia Ordinance No. 1716.[2] We deny Secretary Scheiner's motion and

---

[1] Section 359(b) of the Act of March 4, 1971, P.L. 6, *as amended,* added by Section 2 of the Act of December 21, 1977, P.L. 330, 72 P.S. §7359(b), the so-called Philadelphia Non-Resident Wage Tax Cap, creates a wage tax differential by "capping" the tax imposed on non-residents at a rate of 4 5/16% per year until the tax rate for residents reaches 5.75% when the non-resident tax rate would be 75% of the resident tax rate. The Wage Tax Cap provision is found in the section entitled "Savings Clause and Limitations."

[2] The City has no inherent taxing power. Rather, "[t]he only power that Philadelphia has to impose any tax on its residents is the power that the State gives it. . . ." *Marson v. City of Philadelphia,* 342 Pa. 369, 373, 21 A.2d 228, 230 (1941). The Commonwealth has delegated limited taxing powers to Philadelphia through the Sterling Act, Act of August 5, 1932, Ex. Sess., P.L. 45, *as amended,* 53 P.S. §15971.

4

grant Leonard's motion for summary judgment in part, declaring the Non-Resident Wage Tax Cap and Ordinance No. 1716 to be unconstitutional. This holding is prospective, and we rule that it is to take effect on the first day of July, 1984.

## HISTORY OF CASE

On June 2, 1983, Philadelphia City Council enacted Ordinance No. 1716, which had an effective date of July 1, 1983, and amended the City's Wage and Net Profits Tax by increasing the tax rate from 4 5/16% for *all* taxpayers to 4 96/100% for *Philadelphia residents only.* The rate for all *non-resident taxpayers* remained at 4 5/16%.

On June 27, 1983, Leonard[3] filed a petition for review in this Court's original equity jurisdiction challenging the constitutionality of Ordinance No. 1716 and the Philadelphia Non-Resident Wage Tax Cap. Leonard also sought preliminary and permanent enjoinment of the statutory cap and the city ordinance. On July 19, 1983, President Judge CRUMLISH, JR., issued a Memorandum Opinion and Order, *Leonard v. Thornburgh (Leonard I),* 75 Pa. Commonwealth Ct. 553, 463 A.2d 77 (1983), which denied Leonard's request for preliminary injunction but expressed his opinion that, when it would be ultimately decided, the Non-Resident Cap would likely be struck down. The Court en banc heard the preliminary objections of

---

[3] Thomas A. Leonard and Kathleen Leonard filed a petition for review in this Court's original equity jurisdiction challenging the constitutionality of the Non-Resident Wage Tax Cap, Ordinance No. 1716. In Count III of the petition for review, Graveley Roofing Corporation, a Philadelphia business, challenged the constitutionality of City Ordinance No. 1742, the mercantile tax. By Order dated July 19, 1983, the Graveley portion was transferred to the Court of Common Pleas of Philadelphia County. By stipulation dated July 29, 1983, petitioner Thomas A. Leonard withdrew as a petitioner. The only remaining petitioner, therefore, is Kathleen Leonard.

Governor Thornburgh and Secretary of Revenue Scheiner on September 13, 1983, and issued an Opinion and Order on November 4, 1983, which removed the Governor as a party but retained Secretary Scheiner as a proper party. On February 24, 1984, Leonard and Secretary Scheiner filed the cross-motions for summary judgment which are now before us for disposition.

## DISCUSSION AND THE LAW

Leonard contends that the taxing schematic on *wages earned by the City's residents and non-residents is violative of Article VIII, Section 1 of the Pennsylvania Constitution,*[4] the so-called "Uniformity Clause," which provides:

> All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.

This Court, in *Carl v. Southern Columbia Area School District,* 41 Pa. Commonwealth Ct. 527, 530, 400 A.2d 650, 652 (1979), discussing the Uniformity Clause, stated:

> [I]t [Uniformity Clause] requires that two conditions be met: (1) that the classification of taxpayers subject to a specified tax must be reasonable; and (2) the tax itself must be applied equally within the designated class. If either condition fails, the tax is unenforceable for want of uniformity.

In *Carl,* we applied these conditions precedent and held that taxpayers within the territorial limits of the same taxing authority may not be taxed at different rates because of residency in different counties. The Southern Columbia School District encompassed six municipalities in Columbia County and one in North-

---

[4] Pa. Const. art. VIII, §1.

umberland County. The School District levied an occupational tax based on the assessed occupational valuation of the taxpayer.[5] The valuations were not uniform in the two counties, so that the taxpayers of Columbia County were required to pay a substantially higher tax. Judge BLATT, writing for this Court in *Carl*, ruled that this violated the Uniformity Clause.

> We believe, however, that the Constitution clearly requires uniformity within the territorial limits of the *authority levying the tax,* which here is obviously not the county but the School District. The relevant territorial limits, therefore, are those of the School District regardless of whether or not those limits encompass areas in one county only or in more than one county. (Emphasis in original.)

*Id.* at 532, 400 A.2d at 653.

The Non-Resident Cap differentiates individuals who, solely because of the situs of their residence, pay a different percentage of taxation upon the one common denominator which binds the group, namely, earned salaries, wages, commissions and other compensation.

Applying the reasoning in *Carl*, it is clear that the Cap cannot stand. The City of Philadelphia is the *authority levying the tax*. Those paying the Wage Tax are within its territorial limits because they either work, live in the city, or both. Regardless of which standard is met, the authority levying the tax must apply it equally and uniformly to all subjects

---

[5] Pursuant to the provisions of The Local Tax Enabling Act, the School District initially enacted an occupational tax for the fiscal year July 1, 1975 to July 1, 1976, at a rate of 53% of the assessed occupational valuation. Subsequently, this tax was re-enacted for the fiscal year July 1, 1976 to July 1, 1977, at 90% and for the fiscal year July 1, 1977 to July 1, 1978, at 100% of the assessed occupational valuation.

within its territorial limits. Those persons must be taxed at a uniform rate. The Non-Resident Wage Tax Cap and Ordinance No. 1716, because of their unequal tax liabilities, are unconstitutional violations of the Uniformity Clause.

Secretary Scheiner argues that there is a reasonable basis for the resident, non-resident classification. He suggests that there is a difference in the quantum of services rendered to residents and non-residents of the taxing authority. This position is specious, and we reject it as unquantifiable and unrealistic.

Our late brother, Judge HARRY A. KRAMER, in *City of Philadelphia v. Kenny*, 28 Pa. Commonwealth Ct. 531, 551 n. 10, 369 A.2d 1343, 1354 n. 10 (1977), *cert. denied*, 434 U.S. 923 (1977), *reh'g denied*, 434 U.S. 1025 (1978), definitively articulated this Court's position when he wrote of certain New Jersey residents' arguments:

Having just witnessed the Bicentennial year, when the people of New Jersey and Pennsylvania as well as the people of their sister states have so genuinely shown concern for one another, it is ironic that these cases continue on in what this writer believes to be a frivolous and vexatious manner. There is no question that there have been serious constitutional questions, but they have been resolved many years ago, and yet, many New Jersey residents who desire, understandably, to avoid any more taxation are still attempting to take all the benefits they can wring out of the City of Philadelphia without paying for same. This writer need not go into litany of beneficial services provided by the City. It is sufficient to point to the provision of health care, fire and police protection, to the use of the streets, sewers, water, and other utilities; to the use of Phila-

delphia's hospitals, universities, colleges, museums, aviaries, libraries, zoo, and conservatory, none of which facilities pay taxes. Enough is said concerning the benefits that the New Jersey residents are unfairly reaping at the expense of the Philadelphia taxpayers. In 1977 most reasoning adults who have any familiarity with the front pages of their respective newspapers know that large metropolitan areas, especially cities like Philadelphia and New York, are close to bankruptcy because of the high cost of everything. Inflation hits government as well as it hits the private citizen. The people of this country must come to realize that in order to save the cities, which perform functions which make this country work, the cities cannot continue to provide services to nonresidents without some kind of compensation. To hold otherwise would be to fail to realize that municipal overburden is one of the most important defects in the operation of local governments in this country.

Presently, residents of Philadelphia pay higher taxes for vital municipal services which are available equally and indiscriminately to all who come into the City to earn their livelihood. If a municipality of the Commonwealth, or the federal government for that matter, tried to compute the tax liability of each member of a group or of a subset within the group by basing it on *actual benefits received,* the effort would be futile and the result chaotic. It cannot reasonably be argued that federal or state income tax is directly related to the immediate and actual benefits each individual receives. Indeed, considering the varying needs of each individual, who can evaluate the costs of the benefits provided merely to *City* residents? It is axiomatic that the quantum of services consumed by

an individual is not directly proportionate to the amount of his tax dollars. To argue the validity of such an artificial class distinction is simply an obvious attempt to discriminate against those who live within the City limits or, in the alternative, to have non-residents enjoy all the core City benefits without sharing the concomitant responsibility of contributing to them.

Finally, Secretary Scheiner argues that the General Assembly has the authority to arrange and divide the various subjects of taxation into distinct classes, and the tax will be upheld where the classification is reasonable and bears a valid relationship to the subject of the statute.

Our Supreme Court, per Justice ROBERTS, in *Amidon v. Kane,* 444 Pa. 38, 41, 279 A.2d 53, 55 (1971), wrote:

> We cannot deem a legislative enactment constitutional merely because it may seem in our view to be just, expedient, necessary or wise, or because it enjoys unanimous popular support. The Constitution is in matters of state law the supreme law of the Commonwealth to which all acts of the Legislature and of any governmental agency are subordinate . . . and it is our duty and responsibility to consider *only* whether the legislation meets or violates constitutional requirements. (Citations omitted; emphasis in original.)

Having decided that the Non-Resident Wage Tax Cap violates the Uniformity Clause, we hold that the Cap is per se unreasonable. Further, in our view, the legislature and City Council have arbitrarily created an unjust burden and have discriminated against those wage taxpayers who, because of an invisible parchment boundary line, live by command or choice within the Philadelphia city limits.

REMEDY

Recognizing that petitioner has invoked the equitable jurisdiction of this Court, we must frame an equitable remedy which will provide a fair resolution of the conflict between the taxpayer and his government.

In this quest for fairness, considering that City Council's Ordinance No. 1716 was induced in good faith without the enlightment which this decision today proffers, we look to the guidance found in Mr. Chief Justice BURGER's observation in *Lemon v. Kurtzman (Lemon II)*, 411 U.S. 192, 200-01 (1975):

> In shaping equity decrees, the trial court is vested with broad discretionary power. . . . [I]n constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair and what is workable. "Traditionally, equity has been characterized by a practical flexibility in shaping its remedies and by a facility for adjusting and reconciling public and private needs." . . . Mr. Justice DOUGLAS, speaking for the Court, has said,
>
> "The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims."
> (Citations omitted.)

Preliminary relief requiring cessation of the tax collection process was not granted in July of 1983 because petitioner failed "to establish . . . that greater

injury would result by its [request for preliminary injunctive relief] denial than by the grant of the restrictive order itself." *Leonard I*, 75 Pa. Commonwealth Ct. at 563, 463 A.2d at 82. Relief pursuant to the cumulative test for the issuance of preliminary relief enumerated by our Supreme Court in *New Castle Orthopedic Associates v. Burns*, 481 Pa. 460, 392 A.2d 1383 (1978), was rejected because it was the Chancellor's perception, after argument, that the abrupt emasculation of the City's taxing scheme would have had a disastrous impact upon the City's finances. He said:

> If this Court enjoins the collection of the current wage tax, a $60 million deficit would result, causing an unbalanced budget, and propel the City into a state of fiscal paralysis. An obvious crippling consequence of the City's inability to expend funds is the disruption, if not the termination, of vital municipal services, none the least of which is the police and fire protection, a frightening threat to the residents and nonresidents. This Court will not so endanger the public welfare and is not moved at this preliminary stage to so hold.

*Leonard I*, 75 Pa. Commonwealth Ct. at 564, 463 A.2d at 82.

We are convinced of the validity of that July 1983 Order and, considering the affidavit of Richard G. Gilmore, Director of Finance for the City of Philadelphia, and the other evidence presented, we are acutely aware of the need to fashion a remedy that coincides with fiscal realities inherent in declaring such a taxing scheme constitutionally infirm.

In a proposed order seeking permanent injunctive relief and declaratory judgment referenced in the motion for summary judgment, petitioner seeks an outright refund or credit of all taxes improperly col-

lected. For the reasons to follow, we refuse to order a refund or credit to taxpayers for past taxes collected, and further hold that the remedy here ordered, the abolition of the wage tax rate differential, be prospective in nature and take effect on July 1, 1984.

This Court has previously held that "taxes once paid may not be refunded absent statutory authority." *Carl,* 41 Pa. Commonwealth Ct. at 532, 400 A.2d at 653, quoting *Penn Federal Savings and Loan Association of Philadelphia v. Tax Review Board of the City of Philadelphia,* 18 Pa. Commonwealth Ct. 530, 336 A.2d 907 (1975). Petitioner has directed us to no authority, nor has our research disclosed any, that would allow for any refund or credit for taxes paid under this statute. To the contrary, the wording of the statute and the cases previously cited lead us to the inevitable conclusion that no refund or credit may occur absent explicit statutory language allowing it. Section 359(b), the Wage Tax Cap provision, states in part:

> In the event that all or any part of the provisions of subsection (b) [the Philadelphia nonresident Wage Tax Cap provision] of this section are declared by a court to be unconstitutional, it shall be the duty of the court to construe the remaining amendatory provisions to Article III in accordance with section 358 [the "savings clause"].

Lest a reader misunderstand the import of this decision, we make it clear that there has been no challenge to the Sterling Act itself. What we decide here today is that the setting of different tax rates based upon residency is unconstitutional. Accordingly, the City of Philadelphia is at liberty to impose a tax at any rate the City Council or state legislature determines, so long as the rate is uniform among the taxpayers.

Having decided that the wage tax rate differential is unconstitutional and that no refund is available, we look to the effective date of this decision. We have considered the good faith effort of the City of Philadelphia to comply with a legislatively-mandated taxing scheme, and the public considerations involved therein, and we are in agreement with the City's request that the relief must be prospective in nature. Therefore, we hold that the relief sought by petitioner, *i.e.*, uniformity of the taxation rate, shall be effective on July 1, 1984, the first day of the City's fiscal year.

To hold otherwise would place the City in the unwarranted and untenable position of providing for the 1984 fiscal year shortfall out of 1985 fiscal year revenues. Clearly, the relative harm to the affected taxpayers pales in comparison to the financial upheaval that would be experienced by the City should any other remedy be seriously considered. Guided by our Supreme Court's decision in *Wilson v. Philadelphia School District,* 328 Pa. 225, 195 A. 90 (1937), where an unconstitutional tax was permitted to remain in effect until further legislative action, and the United States Supreme Court decision in *Lemon II,* we must consider the economic reality of the fiscal needs of one of this country's oldest and largest cities. Philadelphia historically has provided the workshop for the neighboring "bedroom communities" and can and will continue to so serve if the responsibilities for mutual survival are honestly, forthrightly appraised and acknowledged by all who would enjoy the fruits of a city struggling for redemption.

## ORDER

The motion for summary judgment of Secretary of Revenue James I. Scheiner is denied; the motion for summary judgment of petitioner, Kathleen Leonard, is granted in part and denied in part. Section 359(b)

of the Tax Reform Code of 1971 and Philadelphia Ordinance No. 1716 are hereby declared to be unconstitutional. Petitioner's request for refund or credit of taxes paid is denied. The holding of this Order is prospective in nature and shall take effect on the first day of July, 1984.

Judges ROGERS and DOYLE did not participate in the decision in this case.