489 A.2d 1349

**Thomas A. LEONARD, et al., Appellee,**

v.

**Richard L. THORNBURGH, Governor, et al., Appellants.**

Supreme Court of Pennsylvania.

Argued Jan. 24, 1985.

Decided April 3, 1985.

318

LeRoy S. Zimmerman, Atty. Gen., Maura A. Johnston, Deputy Atty. Gen., Dauphin Co., Barbara W. Mather, Janet Stern Holcombe, Philadelphia, for appellants.

Barbara W. Mather, Philadelphia, for City of Philadelphia at No. 94.

Maura A. Johnston, Deputy Atty. Gen., at No. 95.

Charles W. Bowser, Philadelphia, for amicus curiae City Council.

Thomas A. Leonard, James P. Leonard, Steven L. Friedman, Philadelphia, for Kathleen Leonard.

Edmunds J. Brokans, Elizabeth A. Read, Philadelphia, for amicus curiae Non-Resident Taxpayers.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an order of the Commonwealth Court which declared unconstitutional Section 359(b) of the Tax Reform Code of 1971, 72 P.S. § 7359(b) (Supp.1984), known as the Philadelphia Non-Resident Wage Tax Cap, and Philadelphia Ordinance No. 1716. *Leonard v. Thornburgh,* 83 Pa.Commw.Ct. 1, 477 A.2d 577 (1984). The Non-Resident Wage Tax Cap limits to 4⁵⁄₁₆% the rate at which non-residents can be taxed by the City of Philadelphia upon income earned in Philadelphia.[1] Ordinance No. 1716, effective July 1, 1983, amended the City's Wage and Net Profits Tax so as to levy the tax at the rates of 4⁵⁄₁₆% upon non-residents, and 4⁹⁶⁄₁₀₀% upon residents. Commonwealth Court, in declaring these provisions unconstitutional, reasoned that the differing tax rates applicable to residents

1. The Non-Resident Wage Tax Cap provides for an exception, not applicable here, covering the situation where residents are taxed at a rate exceeding 5³⁄₄%, in which case the tax upon non-residents may be levied at a rate in excess of 4⁵⁄₁₆%, but the latter rate cannot exceed 75% of the rate applicable to residents.

and non-residents of the City of Philadelphia violated the Uniformity Clause of the Pennsylvania Constitution, Article VIII, Section I, which provides:

"All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

■ The appellant, Secretary of Revenue James I. Scheiner, contends that the tax provisions in question comport with constitutional requirements[2], under the Uniformity Clause of the Pennsylvania Constitution, supra, as well as under the equal protection clause of the Fourteenth Amendment. The appellee, Kathleen Leonard, a resident of Philadelphia who is aggrieved by having been assessed higher wage taxes than would have been payable had she not been a resident of Philadelphia, argues that the Uniformity Clause, rather than the Fourteenth Amendment, is the relevant constitutional standard, and that under that standard the tax provisions are invalid. It is well established, however, that in matters of taxation both constitutional standards are relevant, and that allegations of violations of the equal protection clause, and of the Uniformity Clause, are to be analyzed in the same manner. *Aldine Apartments v. Commonwealth*, 493 Pa. 480, 486–487, 426 A.2d 1118, 1121 (1981); *Commonwealth v. Westinghouse Electric Corp.*, 478 Pa. 164, 168–169, 386 A.2d 491, 493 (1978), appeal dismissed, 439 U.S. 805, 99 S.Ct. 61, 58 L.Ed.2d 97 (1978); *Fisher Controls Co. v. Commonwealth*, 476 Pa. 119, 125, 381 A.2d 1253, 1256 (1977).

■ The principles which govern the analysis of claims of non-uniform taxation are well established. The legislature possesses wide discretion in matters of taxation. *Aldine Apartments v. Commonwealth*, 493 Pa. at 487, 426 A.2d at 1121. The burden is upon the taxpayer to demon-

---

2. In view of our decision upholding the constitutionality of the challenged tax provisions, we need not address the Secretary of Revenue's alternate contention that the decision of Commonwealth Court declaring invalid the provisions in question should be vacated on grounds the Secretary was allegedly not a proper party.

strate that a classification, made for purposes of taxation, is unreasonable. *F.J. Busse Co. v. Pittsburgh*, 443 Pa. 349, 359, 279 A.2d 14, 19 (1971). Accord, *Amidon v. Kane*, 444 Pa. 38, 51, 279 A.2d 53, 60 (1971) ("[T]he challengers of the constitutionality of state or local taxation bear a heavy burden...."). Indeed, tax legislation will not be declared unconstitutional unless it " '*clearly, palpably,* and *plainly* violates the Constitution.' " *Commonwealth v. Life Assurance Co. of Pa.*, 419 Pa. 370, 377, 214 A.2d 209, 214 (1965), appeal dismissed, 384 U.S. 268, 86 S.Ct. 1476, 16 L.Ed.2d 524 (1966). See also, *Campbell v. Coatesville Area School District*, 440 Pa. 496, 501, 270 A.2d 385, 388 (1970).

■■■ Under the equal protection clause, and under the Uniformity Clause, absolute equality and perfect uniformity in taxation are not required. *Columbia Gas Corp. v. Commonwealth*, 468 Pa. 145, 151, 360 A.2d 592, 595 (1976). In cases where the validity of a classification for tax purposes is challenged, the test is whether the classification is based upon some legitimate distinction between the classes that provides a non-arbitrary and " 'reasonable and just' " basis for the difference in treatment. *Aldine Apartments v. Commonwealth*, 493 Pa. at 487, 426 A.2d at 1121–1122. See also, *F.J. Busse Co. v. Pittsburgh*, 443 Pa. at 358, 279 A.2d at 19. Stated alternatively, the focus of judicial review is upon whether there can be discerned "some concrete justification" for treating the relevant group of taxpayers as members of distinguishable classes subject to different tax burdens. *Columbia Gas Corp. v. Commonwealth*, 468 Pa. at 150–153, 360 A.2d at 595–597. When there exists no legitimate distinction between the classes, and, thus, the tax scheme imposes substantially unequal tax burdens upon persons otherwise similarly situated, the tax is unconstitutional. *Commonwealth v. Staley*, 476 Pa. 171, 180, 381 A.2d 1280, 1284 (1978). See also, *Amidon v. Kane*, 444 Pa. at 55, 279 A.2d at 63.

■ Applying these principles to the instant case, we find that the tax scheme in question meets constitutional re-

quirements, for there exists the requisite basis for treating residents and non-residents of Philadelphia as separate classes of wage earners subject to different tax rates. The legitimate distinction between those classes rests not upon the superficial fact that one class resides in Philadelphia while the other resides elsewhere, but rather, at a deeper level of analysis, upon significant differences between the two classes of wage earners that provide reasonable and concrete justifications for their being taxed at different rates.

This is not a case, therefore, where mere residence, uncorrelated with concrete justifications related to the situs of residence, has been relied upon by the taxing authority as an asserted basis for differential tax treatment. In the past, it has been held that residence alone is an insufficient basis upon which to sustain differential tax treatment, absent further justifications which correlate with the status of residency. See *Columbia Gas Corp. v. Commonwealth,* 468 Pa. at 150–155, 360 A.2d at 595–597 (disparate rates of tax on foreign and domestic corporations invalid where Commonwealth offered no justification for taxing foreign corporations more heavily than domestic ones); *Danyluk v. Johnstown,* 406 Pa. 427, 178 A.2d 609 (1962) (city's capitation tax on non-residents held unauthorized and invalid, with dictum indicating that an occupation tax levied only against non-residents would violate constitutional uniformity standards); *Carl v. Southern Columbia Area School District,* 41 Pa.Commw.Ct. 527, 400 A.2d 650 (1979) (school district's tax invalid where, without reasonable justification, taxpayers residing in different counties were charged different amounts for precisely the same educational services).

In the instant case, it may clearly be presumed that non-resident wage earners utilize services provided by the City of Philadelphia to a lesser extent than do residents. Rather than benefit from twenty-four hour and seven day per week availability of such services, non-resident wage earners avail themselves of such services primarily during

an eight hour workday on a five day per week basis. Though the exact proportions of the services used by the two classes are not quantifiable, it is clear that differences in the levels of service utilization must necessarily exist. This is true of city-provided services offered to residents and non-residents alike, such as police, fire, sanitation, and other services. As to each of these, the residents' needs are essentially full-time, while the non-residents' needs are merely part-time. These services receive funding from the City of Philadelphia's General Fund, and it is into the General Fund that wage tax revenues are deposited. Further, there are certain services, funded by the General Fund, that are offered only to residents, such as public schools, mental health and retardation services, and child and family welfare services. In short, residents and non-residents are not similarly situated with respect to their needs for services provided by the City of Philadelphia.

An additional justification for differentiating the tax treatment of residents and non-residents is to be found in the extent of the political representation the two classes enjoy. The legislature, in capping the wage tax rate applicable to non-residents, afforded protection to persons who are subject to city wage taxes but who have no voice in the city council. In contrast, residents of the city have recourse through their own elected representatives, the members of city council, in the event that they believe their tax rates are excessive.

We conclude that valid reasons have been offered for imposing a higher tax rate on resident wage earners of the City of Philadelphia than is imposed upon non-resident wage earners. The wage tax scheme in question is, therefore, in compliance with constitutional requirements governing uniformity of taxation. Accordingly, the order of the Commonwealth Court, declaring the tax provisions in question unconstitutional, is reversed.

Order reversed.

HUTCHINSON, J., joins the majority opinion and joins the Concurring Opinion filed by ZAPPALA, J.

ZAPPALA, J., joins this Majority Opinion and files a Concurring Opinion which is joined by HUTCHINSON, J.

ZAPPALA, Justice, concurring.

While I join in the majority opinion's resolution of the constitutionality of § 359(b) of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, as amended, 72 P.S. § 7359(b), I am writing separately to address the issue which the majority found unnecessary to address before reaching the constitutional claim of a violation of the uniformity clause of the Pennsylvania Constitution.

The Commonwealth Court denied preliminary objections in the nature of demurrer filed on behalf of Secretary of Revenue James Scheiner asserting that he was not a proper party to the action. Relying upon the enumeration of the Department of Revenue's duties and responsibilities, 72 P.S. § 7354, the court concluded that Secretary Scheiner was a proper party to the action because he "has a clear and undisputed interest in defending its [§ 359(b)] constitutionality." R. 51a. Section 7354 provides:

> The department is hereby charged with the enforcement of the provisions of this article, and is hereby authorized and empowered to prescribe, adopt, promulgate and enforce rules and regulations relating to any matter or thing pertaining to the administration and enforcement of the provisions of this article and the collection of taxes imposed by this article.

Section 7354 was not intended to require the Secretary of Revenue to enforce, and impliedly defend, a local tax ordinance such as that adopted by the City of Philadelphia. I would hold that the Secretary of Revenue was not a proper party in this action.

HUTCHINSON, J., joins in this concurring opinion.