# CIRCUIT COURT OF HENRICO COUNTY

Commonwealth of Virginia

v.

Anthony Oladunmi Price

August 13, 2007

Case No. CR07-3673-00M

BY JUDGE L. A. HARRIS, JR.

On July 26, 2007, Mr. Price appeared in the Henrico County General District Court with counsel to answer the charge of the fifth offense in violation of Va. Code § 46.2-301, driving after his privilege to drive is revoked or suspended. Prior to the Court's assessing the $750.00 civil remedial fees as required by Va. Code § 46.2-206.1, the defendant moved the court to dismiss the statute as unconstitutional, to which the Commonwealth responded. On August 2, 2007, the Henrico County General District Court declared Va. Code § 46.2-206.1 unconstitutional and declined to assess the civil remedial fees on Mr. Price. The matter is now before this Court pursuant to Va. Code § 16.1-131.1.

Va. Code § 46.2-206.1(A) reads:

> The purpose of the civil remedial fees imposed in this section is to generate revenue from drivers whose proven dangerous driving behavior places significant financial burdens upon the Commonwealth. The civil remedial fees established by this section shall be in addition to any other fees, costs, or penalties imposed pursuant to the Code of Virginia.

Further, Paragraph B of the statute limits the assessment of these civil remedial fees to "any resident of Virginia operating a motor vehicle on the highways of Virginia." The sole issue, as agreed by the parties, is whether the assessment of these fees on Virginia residents, but not on non-residents, violates the Equal Protection Clauses of the Constitutions of the United States and Virginia. The parties further agree that the only issue to be decided is whether this statute bears a rational relationship to a legitimate legislative purpose, therefore, being within the purview of the Equal Protection Clauses.

"All statutes enacted by the General Assembly are presumed to be constitutional." *Finn v. Virginia Retirement System*, 259 Va. 144, 153 (2000), *citing Pulliam v. Coastal Emergency Services*, 257 Va. 1, 9 (1999). The burden is on the party attacking the statute to negate "every conceivable basis which might support it." *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973). In explaining rational-basis review, the United States Supreme Court has stated:

> Courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational basis review because it "is not made with mathematical nicety or because in practice it results in some inequality."

*Heller v. Doe*, 509 U.S. 312, 320 (1993), *quoting Dandridge v. Williams*, 397 U.S. 471, 485 (1970).

Further, a statutory classification will not be set aside if *any* set of facts may reasonably be conceived that would serve to justify the classification. *Finn* at 155, *quoting McGowan v. Maryland*, 366 U.S. 420, 425-26 (1961). Moreover, the United States Supreme Court has stated:

> [W]hether embodied in the Fourteenth Amendment or inferred from the Fifth, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. . . . A statutory classification . . . must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

*F.C.C. v. Beach Communications*, 508 U.S. 307, 313 (1993).

Finally, the state has no obligation to produce evidence to sustain a statutory classification's rationality. "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported

by evidence or empirical data." *Heller* at 320, *quoting Beach Communications* at 315. Therefore, the defendant bears the burden of demonstrating that there can be no conceivable set of facts that would rationally support the distinction made in Va. Code § 46.2-206.1 between Virginia residents and non-residents.

Defendant relies on *Williams v. Vermont*, 472 U.S. 14 (1985), to support his position that Va. Code § 46.2-206.1 violates the Equal Protection Clauses. In *Williams*, the United States Supreme Court struck down a Vermont statute that granted a credit for sales tax paid to another state on motor vehicles bought by Vermont residents, but denied the credit to those who bought and registered their vehicles in another state before becoming a Vermont resident. In explaining its decision, the Supreme Court stated that residence at the time of the vehicle purchase is an arbitrary basis on which to distinguish between present Vermont registrants. *Id.* at 23. The Court stated, "Having registered a car in Vermont, they are similarly situated for all relevant purposes. *Each is a Vermont resident, using a car in Vermont, with an equal obligation to pay for the maintenance and improvement of Vermont's roads.*" *Id.* at 23-24 (emphasis added).

Clearly, *Williams* can be distinguished from the case at hand. The statute in question in *Williams* distinguished between two groups of its own residents. In other words, both statutory classifications in *Williams* were Vermont residents, the only difference being that one group bought their vehicles while Vermont residents and the other group bought their vehicles before becoming Vermont residents. In fact, the *Williams* case seems to intimate that, if one group did not have an equal obligation to pay for the maintenance and improvement of Vermont's roads, then the classification would be appropriate. This is what we have here. The two classes in this case do not have an equal obligation to pay for Virginia roads. Clearly, Virginia residents have more of an obligation to finance their own roads, than do non-residents driving through on Virginia's highways.

Defendant also relies on *Estes Funeral Home v. Adkins*, 266 Va. 297 (2003), to support his argument that this statute violates the Equal Protection Clauses. *Estes* concerned an ordinance levying fees for solid waste disposal in Wise County, Virginia. *Id.* at 299-300. The statute in question in *Estes* involved a distinction between households and businesses and then among different types of businesses. *Id.* at 300. The Supreme Court of Virginia struck down the ordinance in question stating, "[T]he complainants carried their burden of establishing the unreasonableness of the classifications in the Ordinance." *Id.* at 306. However, *Estes* concerned an ordinance, not a state statute. Therefore, the level of review is different. In order to prevail in challenging an ordinance, the challenger must prove that the ordinance is

unconstitutional or unreasonable. *Id.* at 303. Therefore, when an ordinance is being challenged as unreasonable, the challenge must be met with evidence of reasonableness. *Id.* at 303, *citing Narrows v. Clear-View Cable TV*, 227 Va. 272, 280-81 (1984). The *Estes* court found the ordinance unreasonable, not necessarily unconstitutional. *Id.* at 306-07. As previously noted, when state statutes are being challenged, the Commonwealth has no obligation to produce any evidence in support of the law; nor does the Commonwealth bear the burden of proving the statute "reasonable." *Heller, supra*, at 320.

The Commonwealth cites *Leonard v. Thornburgh*, 489 A.2d 1349 (Pa. 1985),[1] in support of its position that the classification in question here is rationally related to a legitimate state purpose. *Leonard* involved a law that taxed the wages of Philadelphia residents at a higher level than the wages of non-residents. *Id.* at 1351. The Supreme Court of Pennsylvania upheld the statute stating that there are valid reasons for imposing a higher tax rate on resident wage earners than on non-resident wage earners. *Id.* at 1352. The Court stated:

> It may clearly be presumed that non-resident wage earners utilize services provided by the City of Philadelphia to a lesser extent than do residents. Rather than benefit from twenty-four hour and seven day per week availability of such services, non-resident wage earners avail themselves of such services primarily during an eight hour workday on a five day per week basis. Though the exact proportions of the services used by the two classes are not quantifiable, it is clear that differences in the levels of service utilization must necessarily exist.

*Id.* at 1352-53.

The same could be extrapolated to Virginians' use of Virginia's highways. While we may not know "the exact proportions" of Virginia resident drivers to non-resident drivers on Virginia's highways at any given time, undoubtedly, Virginians make greater use of Virginia's highways than do non-residents. In Paragraph A of Va. Code § 46.2-206.1, the legislature explained that the purpose of this statute, "is to generate revenue from drivers whose proven dangerous driving behavior places significant financial burdens upon the Commonwealth." It logically follows that Virginians make up a

---

[1] Note that the Commonwealth and subsequently the Henrico County General District Court inadvertently miscited this case as 489 A.3d 1349.

greater percentage of dangerous drivers than do non-residents since Virginians make up the greater percentage of drivers on Virginia's highways. This underlying assumption could provide a rational basis for the classification at hand, keeping in mind that the Commonwealth bears no burden to put on dispositive evidence or statistics to support this assertion. *Heller, supra,* at 320.

This Court further finds that the difficulty in collecting fees from out-of-state offenders could provide a rational basis for the classification at hand considering the stated purpose of the civil remedial fees is to "generate revenue." Two multi-state compacts affecting the collection of traffic fines and costs from non-residents are relevant to this analysis. The Driver License Compact, Va. Code § 46.2-483, does not provide the authority to collect civil remedial fees.

> If the laws of a party state do not provide for offenses or violations denominated or described in precisely the words employed in subdivision (a) of this article, such party state shall construe the denominations and descriptions appearing in subdivision (a) hereof as being applicable to and identifying those offenses or violations of a *substantially similar nature* and the laws of such party state shall contain such provisions as may be necessary to ensure that full force and effect is given to this article.

Va. Code § 46.2-483 (emphasis added). Therefore, unless the home state had "substantially similar" civil remedial fees, there would be no similar conduct that could occur in the home state which would require the revocation of a driver's license in the home state. This would create a problem in attempting to collect these civil fees from out-of-state drivers.

The Non-Resident Violator's Compact, Va. Code § 46.2-944, *et seq.,* is a second multi-state compact that provides no basis to collect civil remedial fees from out-of-state drivers. That statute reads:

> When issuing a citation for a traffic violation, a police officer shall issue the citation to a motorist who is a resident of or holds a driver's license issued by a party jurisdiction and shall not . . . require such motorist to post collateral or bond to secure appearance for trial. . . .

Va. Code § 46.2-945(A).

If a driver fails to appear, under this statute, the Department of Motor Vehicles shall report this to the driver's home state, who may then suspend his driving privileges. For a driver to fully comply, he must appear for his hearing and pay any applicable fees and costs. Va. Code § 46.2-944. Further, the Non-Resident Violator's Compact is only applicable to offenses for which the officer may issue a summons rather than obtain a warrant. Additionally, this law cannot be used for any offense for which the conviction results in a revocation of one's driver's license. Va. Code § 46.2-945(C). This subsection eliminates many of the offenses that trigger the civil remedial fees under § 46.2-206.1. While this statute does involve the collection of fees and costs from non-residents, it is limited to court fines and costs, not remedial fees as addressed here. Possibly, the legislature, in contemplating Va. Code § 46.2-206.1, rationally decided to exclude non-residents in this civil remediation fee legislation because the costs of collecting on a judgment outweighs any benefits with respect to out-of-state motorists.

The Court is aware that at least four other states, Michigan, Texas, New York, and New Jersey, have enacted legislation similar to the legislation at issue here. The Court further recognizes that each of these states includes both residents and non-residents in the fees assessed. However, it is concluded that this has no bearing on the issue before this Court.

It should be reiterated that this law should not be scrutinized under a "fair" or "politically correct" standard, but must be analyzed under the aforementioned rational basis. Although reasonable people can differ on the appropriate conclusion, this Court finds that the defendant has not met his burden of negating "every conceivable basis" which might support this legislative classification. The Court finds that there is a conceivable rational basis for this legislation's classifications and holds Va. Code § 46.2-206.1 constitutional. This matter is remanded to the Henrico County General District Court pursuant to Va. Code § 16.1-131.1.

*Order*

This matter is before the Court on the Commonwealth's appeal to the judgment of the Henrico County General District Court declaring Va. Code § 46.2-206.1 unconstitutional. After reviewing the briefs and hearing oral argument the Court finds § 46.2-206.1 of the Code of Virginia (the paragraphs applicable to this case) to be constitutional for the reasons stated in the Court's opinion of this date which is incorporated herein by reference. Therefore, pursuant to § 16.1-131.1 of the Code of Virginia, the matter is remanded to the Henrico General District Court for trial.