**AMERICA ONLINE, INC., Petitioner**

**v.**

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 14, 2007.

Decided Sept. 7, 2007.

James L. Fritz, Harrisburg and Martin I. Eisenstein, Lewiston, ME, for petitioner.

Karen M. Gard, Sr. Deputy Attorney General, Harrisburg, for respondent.

BEFORE: COLINS, Judge, McGINLEY, Judge (P.) and KELLEY, Senior Judge.

OPINION BY Judge McGINLEY.

America Online, Inc. (AOL) appeals from an order of the Board of Finance and Revenue (Board of F & R) which affirmed the decision of the Department of Revenue Board of Appeals (BOA) that denied AOL's petition for refund of sales and use tax paid in 2000 and 2001 on the purchases of port modem management services from Sprint Corporation (Sprint).[1]

AOL is an internet service provider engaged in the business of selling online services, including Internet access services to customers[2] throughout the United States, including the Commonwealth.[3] During 2001, AOL paid sales tax in the amount of $1,071,464.04 on network services purchased from Sprint.

On December 19, 2003, AOL filed a petition for refund with the BOA and sought a refund of sales tax paid on certain network services purchased from Sprint during the period November 1, 2000 through December 31, 2001. On February 20, 2004, the BOA denied AOL's refund claim. AOL filed an appeal with the Board of F & R on May 13, 2004. The Board of F & R sus-

---

**1.** The parties stipulated that if AOL is entitled to a sales and use tax refund the amount should be $1,071,464.04. Partial Stipulation of Facts (PSF) 27.

**2.** Also referred to as "members".

**3.** The "Internet" constitutes the facilities which comprise the interconnected worldwide web network of networks that employ the Transmission Control Protocol/Internet Protocol ("TCP/IP") and other protocols to communicate information by wire or radio between computers. PSF 11.

tained the BOA's action on August 13, 2004. This appeal followed for which the parties entered into a partial stipulation of facts.

The stipulation of facts provides that in order for AOL to provide its online services it has to maintain many computers known as servers at its Northern Virginia data centers, which are connected to other computers on the Internet. PSF 13. There are two primary ways customers can access the Internet: (1) by a broadband connection; or (2) by a dial-up connection. PSF 14. The sales tax AOL paid that is the subject of the refund claim involves network services Sprint provided to AOL in connection with dial-up access by members to AOL's online services. PSF 15. A customer's dial-up access begins with the computer modem attached to the customer's computer. PSF 16. The computer and the modem are "customer premises equipment" and are neither owned nor controlled by either AOL or Sprint. PSF 16. The modem attached to the customer's computer dials a telephone access number associated with a business local exchange service line that Sprint obtains from a local exchange carrier. PSF 16. Because telephone lines transport an analog signal, the modem attached to the customer's computer must convert the format of the computer's outgoing signals from a digital format into an analog format. PSF 16.

The exchange service line connects to a bank of AOL service modems[4] physically located at premises controlled and managed by Sprint.[5] PSF 17. The modems are tangible personal property leased by AOL from third party leasing companies. PSF 18. The bank of modems at the Sprint premises convert the analog signal coming in from the exchange service line into a digital signal, which is then transmitted over Sprint's data network to the computers located in the AOL data center. PSF 19. The bank of modems also convert the information, which is transmitted from the Internet and the AOL data center over the Sprint data network to the modems, from a digital format to an analog format for transmission back to the customer. PSF 19.

AOL had an agreement with Sprint for the port modem management services provided, referred to as the Master Agreement for Data Communications (Master Agreement), entered into on May 25, 2003, which was subsequently amended. PSF 20. The services provided by Sprint which are part of the refund claim are governed by the Second Amendment to the Agreement, dated October 31, 1995 (1995 Amendment), a letter agreement dated December 30, 1997 (1997 Agreement), or a letter agreement amendment dated April 22, 1999 (1999 Agreement). PSF 21. AOL paid a fixed charge per month or in some instances a per-hour charge for the Sprint services. PSF 22. The fixed monthly recurring charges under the 1995 Amendment and 1997 Agreement were designated as "Port Modem Management." PSF 23. Under the 1995 Amendment and 1997 Agreement, Sprint also charged a separate measured rate based on AOL's usage of the Sprint data network, referred to as "backbone transmission."[6] PSF 23.

---

4. Also referred to as "ports." Sprint "terminal/net servers" housed the modem banks.

5. AOL has paid applicable sales and use tax associated with the lease, and such sales and use tax payments are not at issue here. PSF 18.

6. AOL's refund claim does not seek sales tax paid at the measured rate for the usage of the Sprint data network (transmission of the data between the dial-up modems and AOL's two data centers). P S of F No. 23.

Under the 1999 Agreement, Sprint required AOL to pay one flat charge per modem or port managed by Sprint, with no separate measured rate charge for AOL's usage of the Sprint data network (backbone transmission). PSF 24. The flat charge per modem was designated on the invoice as "Port 4.5 Mgmt" or "Port 4.K + Mgt." PSF 24. During the period of the refund claim of November 1, 2000, through December 31, 2001, the total Pennsylvania sales tax AOL paid Sprint for service invoiced as Port Modem Management was $497,852.16, and the total Pennsylvania sales tax AOL paid Sprint for services invoiced as Port 4.5 Mgmt or Port 4.5K + Mgmt. was $573,611.90. PSF 26. The total refund of tax sought on purchases of port modem management service provided by Sprint totaled $1,071,464.04. PSF 27.

■ The questions before this Court are whether: 1) the Sprint port modem management service is a taxable telecommunications service under Pennsylvania Sales and Use Tax Law; 2) the Commonwealth's interpretation of the Department of Revenue's Policy Statement 60.20 is contrary to the Internet Tax Freedom Act; and 3) port modem management is an enhanced service under federal communication law.[7]

## Telecommunications Service v. Enhanced Telecommunications Service under PA Sales and Tax Use Law and Federal Communications Law [8]

The Commonwealth maintains that the Sprint port modem management service

qualifies as a taxable telecommunication service under Pennsylvania Sales and Use Tax Law.[9] Section 202 of the Tax Reform Code of 1971 (Tax Code)[10] imposes a sales and use tax on purchases of tangible personal property sold within the Commonwealth. "Tangible personal property" includes "interstate telecommunication service originating or terminating in the Commonwealth and charged to a service address in this Commonwealth." Section 201 of the Tax Code, 72 P.S. § 7201(m). In turn, "telecommunications service" is defined, in pertinent part, at Section 201(rr) of the Tax Code, 72 P.S. § 7201(rr), as:

Any one-way transmission or any two-way, interactive transmission of sounds, signals, or other intelligence converted to like form, which effects or is intended to effect meaningful communications by electronic or electromagnetic means via wire, cable, satellite, light waves, microwaves, radio waves, or other transmission media. The terms include all types of telecommunication transmissions, such as local, toll, wide-area or any other type of telephone service....The term does not include any of the following:

. . . .

(3) Charges for access to the Internet. Access to the Internet does not include any of the following:

. . . .

(B) Telecommunication services purchased by an Internet service provider to deliver access to the Internet to its customers.

---

**7.** This Court's review of an appeal from the Board of F & R is de novo. *Kelleher v. Commonwealth*, 704 A.2d 729 (Pa.Cmwlth. 1997). However, a stipulation of facts is binding and conclusive on this Court. *Id.*

**8.** This Court will address AOL's first and third issues concurrently.

**9.** The BOA and Board F & R concluded that the Sprint port modem management service is a taxable telecommunications service under Section 202 of the Code, 72 P.S. § 7202.

**10.** Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7202.

In addition, "telecommunications service" is defined in the Pennsylvania Department of Revenue Policy Statement 60.20 and includes "all types of telecommunications transmissions" but does not include "enhanced telecommunications services." See 61 Pa.Code § 60.20(a). "Enhanced telecommunications services" is defined in the Policy Statement as:

(i) Services, offered over a telecommunications network, which employ computer processing applications that include one or more of the following:

(A) Acts on the format, content, code, protocol or similar aspects of the purchaser's transmitted information.

(B) Provides the purchaser additional, different or restructured information.

(C) Involves the purchaser's interaction with stored information.

(ii) Examples of enhanced telecommunications services include electronic publishing, Internet access, voice mail and electronic mail services. Services utilizing any of the computer processing applications in subparagraph (i) solely for the management, control or operation of a telecommunications system or the management of a telecommunications service is not an enhanced telecommunication service.

61 Pa.Code § 60.20(a).

AOL contends that based on the Policy Statement, a service will constitute enhanced telecommunication services, and will not be taxable, if it is offered over a telecommunications network and uses a computer processing application to perform any of the functions listed in 61 Pa. Code § 60.20(a)(i)(A), (B), (C).

AOL argues that the Sprint Port Modem Management services performed no fewer than five different computer processing applications that each independently qualified the services as enhanced telecommunications service under Pennsylvania sales tax law. AOL contends that the port modem management services qualified as enhanced telecommunications services because of the change in the format of the transmitted information from analog to digital (and vice versa). In addition, the port modem management services interacted with stored information and furnished additional information. It also provided detailed accounting and statistical data that AOL required in order to manage its service collectively. Finally, the Sprint terminal/server performed a telnet session, which is a computer processing application that acted on and restructured information also qualifying it as an enhanced telecommunications service not subject to sales tax.

AOL contends that this Court's 2006 *en banc* decision in *Concentric Network Corporation v. Commonwealth of Pennsylvania*, 897 A.2d 6 (Pa.Cmwlth.2006), and this Court's 2005 panel decision in *Concentric Network Corporation v. Commonwealth of Pennsylvania*, 877 A.2d 542 (Pa.Cmwlth. 2005), concluded that 61 Pa.Code § 60.20 represented the proper interpretation of what constitutes enhanced telecommunications service.

Concentric Network Corporation (Concentric), an internet service provider, was engaged in the business of selling internet access. Concentric filed a petition for refund of sales and use tax paid on data transport services purchased from telecommunication carriers to form a network that interconnected with the internet backbone to provide its customers with internet access. BOA denied Concentric's claim and the Board of F & R sustained the decision of the BOA. Before this Court Concentric argued that its data transport services did not meet the definition of telecommunications services because a transmission function was not included in the

purchases made. This Court concluded that the data transport services met the definition of telecommunications service because Concentric used the lines to transmit data and therefore the purchases were subject to sales and use tax.

In contrast to *Concentric,* AOL argues that it paid Sprint to operate and manage its ports/modems that are used to provide its online services and that the port modem management service charge was a charge for operating the equipment, not a charge on the data transport services as was the case in *Concentric.* Moreover, AOL argues that it is clear from *Concentric* that the inclusion of transmission in a single service does not transform an otherwise enhanced telecommunications service into a taxable telecommunications service.

AOL admits that the transmission services (backbone usage) were purchased and billed with the port modem management services. However, AOL contends that its primary objective in purchasing services from Sprint was port modem management. Therefore, the port modem management services should not be classified as a basic telecommunication service merely because it was purchased and billed together with transmission services (backbone usage). *See National Cable & Telecommunications Ass'n v. Brand X Internet Servs.,* 545 U.S. 967, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005) (where the United States Supreme Court concluded that a cable modem service comprised of both enhanced and basic service components was properly viewed as a single, integrated enhanced service). AOL argues that its bundle of integrated services, i.e. port modem management service and transmission

service, is enhanced despite the legal precedent that transmission service, alone, is a basic telecommunication service.

Finally, AOL recognizes that the purchase of transmission service (backbone usage) would constitute a "sale at retail" [11] which would be taxable EXCEPT that the predominant purpose of the service AOL purchased from Sprint was port modem management service, not transmission service. Therefore, as an enhanced telecommunication service, the port modem management service does not constitute a taxable "sale at retail."

In response, the Commonwealth argues and this Court agrees that the port modem management services meet the definition of taxable telecommunications services in as much as Sprint's management and operation of the AOL ports/modems is just one of the purposes for which AOL uses Sprint services. AOL purchased the Sprint services to assemble and manage a collection of hardware, software and telecommunications services that transport data to and from its data center to AOL's members.

Despite AOL's arguments to the contrary, "management" is only one component of the Sprint services and the remaining Sprint services are used for taxable purposes. Section 201(k)(9) of the Tax Reform Code of 1971, 72 P.S. § 7201(k)(9), provides that:

> Where tangible personal property or services are utilized for purposes constituting a "sale at retail" and for purposes excluded from the definition of "sale at retail," it shall be presumed that such tangible personal property or services

---

**11.** "Sale at retail" is defined at Section 201(k)(1), (4) of the Tax Code, 72 P.S. § 7201(k)(1), (4), as "[a]ny transfer, for a consideration, of the ownership, custody or possession of tangible personal property" and the "rendition for a consideration of the service of repairing, altering … tangible personal property." A "sale at retail" of tangible personal property is subject to sales and use tax. Section 202(a), (b) of the Tax Code, 72 P.S. § 7202(a), (b).

are utilized for purposes constituting a sale at retail and subject to tax unless the user thereof proves to the Department that the predominant purposes for which such tangible personal property or services are utilized do not constitute a "sale at retail."

■ Initially, Sprint billed the port modem management services and the transmission services (backbone usage) separately, however amendments to the master agreement were made and ultimately AOL was billed one flat fee which included both services. The flat fee charge included local exchange carrier access service at the port modem management site, management and maintenance of the Sprint-provided equipment, and use of the Sprint backbone network. Local exchange carrier access (telephone lines Sprint obtained from a local exchange carrier) is taxable because telephone service is included in the definition of telecommunications service, and telecommunications services are tangible personal property subject to sales and use tax. 72 P.S. §§ 7201(m), 7201(rr), 7202(a), (b). In addition, backbone usage (transmission service) meets the definition of telecommunications service because Sprint used its network or backbone to transmit signals between AOL members and data centers. Therefore, the services were used for taxable purposes and constituted a taxable sale at retail.[12]

Even if the predominant purpose for which the Sprint services were utilized was for the management of AOL's modems, the modems belonged to AOL and therefore, whatever functions were accomplished in the modems were separate from and not attributed to the Sprint services. The terminal/net server, including modems, were located at Sprint premises but were not owned by Sprint. Therefore, any conversions of format occurred in the AOL modems and were not attributable to the Sprint network.

AOL argued that the Sprint services fell within the definition of "enhanced telecommunications service" because of the computer processing applications Sprint performed. If the conversions performed in the AOL modems were attributable to the Sprint services, the Sprint services were taxable telecommunications services because any computer processing applications that took place were "for the management, control or operation of a telecommunication system or the management of a telecommunications service" which excluded them from the definition of enhanced telecommunications service. 61 Pa.Code § 60.20(a).

Because 61 Pa.Code § 60.20 does not explain the meaning of the phrase "solely for the management, control or operation of a telecommunication system or the management of a telecommunication service" the Commonwealth argues, and this Court agrees, that it is instructive to consult federal communication law. See *Concen-*

---

**12.** AOL argued that the port modem management and transmission (backbone usage) services should be classified as one enhanced service because under *Brand X* a cable modem service comprised of both enhanced and basic service components were viewed as a single, integrated enhanced service that was non taxable. Despite AOL's assertion that every combination of basic and enhanced services should be viewed as a single integrated enhanced service *Brand X* dealt with a specific connection, cable modem service, not the services at issue here. Cable modem service was considered to be an enhanced service. However the Federal Communications Commission (FCC) has made clear that a carrier may not change the nature of a service from "basic" to "enhanced" by adding enhanced features onto an otherwise basic service. Therefore, this Court does not believe that a combination of basic and enhanced services automatically qualifies for enhanced telecommunications status, but instead must be considered on a case by case basis.

*tric,* 897 A.2d 6, 9–10 (where this Court concluded that federal regulation of Internet service providers is relevant, if not controlling, in a determination whether the service provider's purchase is a telecommunications service or an enhanced service.) Pennsylvania definitions of "telecommunication service" and "enhanced telecommunications service" track federal definitions and the FCC regulatory framework.

Under federal law the FCC has distinguished "basic" telecommunications services (now referred to as "telecommunications") from "enhanced" services (now referred to as "information services").[13] Under the FCC regulations the distinction between "basic" and "enhanced" services is similar to the distinctions in Pennsylvania law.

> [B]asic service is limited to the common carrier offering of transmission capacity for the movement of information, whereas enhanced service combines basic service with computer processing applications that act on the .format, content, code, protocol or similar aspects of the subscriber's transmitted information, or provide the subscriber additional, different, or restructured information, or involve subscriber interaction with stored information.

Amendment of Section 64.702 of the Federal Communication Commission's Rules and Regulations (*Second Computer Inquiry*), 77 F.C.C.2d 384, 387 (1980).

In addition, the FCC has identified three categories of protocol processing that might resemble enhanced services, but are considered basic telecommunications services. The three categories are summarized in the FCC's Non–Accounting Safeguards Reconsideration Order:

> These categories include protocol processing: 1) involving communications between an end user and the network itself (e.g., for initiation, routing, and termination of calls) rather than between or among users; 2) in connection with the introduction of a new basic network technology (which requires protocol conversion to maintain compatibility with existing CPE [customer premise equipment]); and 3) involving internetworking (conversions taking place solely within the carriers network to facilitate provision of a basis network service, that result in no net conversion to the end user).

The computer processing applications that Sprint performed fall within these exceptions. For example, the analog to digital format changes fall within the protocol processing exception number 2 because the modems accommodate the introduction of a new basic network technology (which required protocol conversion to maintain compatibility with the existing customer premise equipment); and exception number 3 because modems make the format conversion (from analog to digital and digital to analog) to facilitate the ren-

---

**13.** The terms were modified under the 1996 Telecommunications Act, Pub.L. 104–104, February 8, 1006, 110 Stat. 56. "Telecommunications service" is defined as "the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, regardless of the facilities used." 47 U.S.C. § 153(46). "Telecommunications" is defined as "the transmission, between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information was sent and received." 47 U.S.C. § 153(43). "Information service" is defined as "the offering of a capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications ... but does not include ... the operation of a telecommunications system." 47 U.S.C. § 153(20).

dition of a basic network service which results in no net conversion to the AOL member.[14] In addition, the P3 protocol (which is AOL's proprietary session protocol) is wrapped with TPC/IP (a transmission protocol) which enables it to be transmitted over the Sprint backbone for receipt at the AOL data centers. This protocol conversion fit within exception number 3 because it involves "internetworking." Finally the routing of internet protocol addresses (from Sprint and to Sprint) falls within exception number 1 because it routes communications between an end user and the network.

### Internet Tax Freedom Act

AOL contends that it was error for the Board of F & R to resort to federal communication law when interpreting 61 Pa. Code § 60.20. Section 1101(a) of the federal Internet Tax Freedom Act (ITFA), prohibits states from imposing taxes on internet access and discriminatory or multiple taxes on electronic commerce, unless the tax was "generally imposed and actually enforced" prior to October 1, 1998.[15]  61 Pa.Code § 60.20 constitutes a rule that imposes taxes on services that fall within the definition of "telecommunication services." However, AOL argues that in order to be consistent with the ITFA, the Department of Revenue may not impose a sales tax on a service that is not a taxable telecommunications service as defined in 61 Pa.Code § 60.20. AOL contends that the plain language of 61 Pa.Code § 60.20 clearly indicates that the port modem management services purchased clearly constitute a non taxable enhanced service.

In response, the Commonwealth contends that the ITFA is not applicable here. This Court must agree. The version of the ITFA in effect during the time frame of the purchases defined "Internet access" as "a service that enables users to access content, information, electronic mail, or other services offered over the Internet and may also include access to proprietary content, information and other services as apart of a package of services offered to consumers. *Such term does not include telecommunications services.*" Section 1104(5) of the ITFA (emphasis added). AOL, not Sprint, provided "internet access" as defined by the ITFA to its customers. The Sprint services 1) were used by AOL to transmit data between AOL customers and AOL data centers; 2) maintained the hardware and software; and 3) managed a telecommunication system/service. These functions constitute telecommunications services as defined in 61 Pa.Code § 60.20, and explained *supra.*

Moreover, the Sprint services do not constitute electronic commerce. "Electronic Commerce" is defined as "any transaction conducted over the Internet or through Internet access, comprising the sale, lease, license, offer or delivery of property, goods, services, on information, whether or not for consideration, and includes the provision of Internet access." Section 1104(3) of the ITFA. AOL contends that the Sprint services constitute electronic commerce because the services are part of the means whereby AOL provides internet access to its customers. This Court must again disagree. The Sprint services help AOL provide internet

---

**14.** The analog to digital and digital to analog conversions fall within the excepted protocol conversion services and are used solely for the management, control or operation of a telecommunication system or the management of a telecommunications service.

**15.** Internet Tax Freedom Act, Pub.L. 105–277, Div. C, Title XI, §§ 1100–1104, § 1101(a)(1)-(2), 112 Stat. 2681–719 (1998) (current version at 47 U.S.C. § 151 note).

access to its customers, however, AOL is the internet service provider and the purchased Sprint services are not transactions "conducted over the Internet or through Internet access." Therefore, Pennsylvania's taxes on the Sprint services do not violate the provisions of the ITFA.

### *Conclusion*

The port modem management services purchased from Sprint by AOL include telecommunications services as well as the maintenance of hardware and software. The Sprint services meet the definition of "telecommunications service" and qualify as a taxable "sale at retail".

Judge COLINS dissents.

### *ORDER*

AND NOW, this 7th day of September, 2007, it appearing the port modem management services from Sprint are "telecommunications services" their sales are taxable "sales at retail." The Board of Finance and Revenue is affirmed. It is further Ordered that unless exceptions are filed within thirty (30) days from the date of this order pursuant to Pa. R.A.P. 1571, the Chief Clerk shall enter judgment in the favor of the Commonwealth of Pennsylvania.