# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Level 3 Communications, LLC,  :
                   Petitioner  :
                                :
          v.                    :  No. 166 F.R. 2007
                                :  Argued:  September 17, 2015
Commonwealth of Pennsylvania,   :
                   Respondent   :


BEFORE:  HONORABLE DAN PELLEGRINI, President Judge
         HONORABLE RENÉE COHN JUBELIRER, Judge
         HONORABLE P. KEVIN BROBSON, Judge


OPINION BY JUDGE BROBSON                 FILED:  October 15, 2015


Level 3 Communications, LLC (Level 3), petitions this Court for review of an order of the Board of Finance and Revenue (the Board). For the reasons set forth below, we reverse.

Level 3 is an international Internet[1] Service Provider (ISP) operating a Tier 1 network.[2] Level 3 sells various services, including (3)ConnectModem (3CM). 3CM is a service that provides the infrastructure, including the local dial network, telephone numbers, and modems, for ISPs desiring to outsource the

---

[1] The internet constitutes the facilities which comprise the interconnected world-wide web network of networks that employ the Transmission Control Protocol/Internet Protocol (TCP/IP) and other protocols to communicate information by wire or radio between computers. *America Online, Inc. v. Commonwealth*, 932 A.2d 332, 333 n.3 (Pa. Cmwlth. 2007) (*AOL/Sprint*), *aff'd*, 963 A.2d 903 (Pa. 2008).

[2] A Tier 1 network is a network that can reach every other network on the internet without paying a fee to the other networks.

remote access to their network or the internet. America Online, Inc. (AOL) and other retail ISPs[3] purchased Level 3's 3CM service to provide internet access to their dial-up end-users. In other words, AOL sold internet access to its end-users and outsourced to Level 3 the physical infrastructure necessary for AOL's end-users to access the internet.

To initiate an internet session utilizing the 3CM service, the end-user opens the ISP software on his or her home computer. The software initiates an analog call over the local telephone lines. The call is then routed to a Level 3 facility, which contains a network access point, modems, modem banks, and network access servers, along with other equipment. Level 3 then converts the analog call to a digital signal. Traffic on the digital side of the Level 3 modem is routed by Level 3 directly to or from one or more datacenters.[4] In order to accomplish this, Level 3 looks-up the numerical IP[5] address[6] associated with the end-user's requested web page,[7] routes the end-user to the requested web page using the IP address, and ultimately creates the end-user's internet session.

In the case of AOL end-users, the first-requested web page was always www.aol.com, because the AOL software resident on the end-user's device required that all end-users be routed there first. AOL took advantage of several

---

[3] A retail ISP sells internet access to an end-user, such as a residential customer.

[4] A datacenter is a facility that hosts web content and that contains hardware and software.

[5] IP, short for Internet Protocol, is the principle communications protocol used to transmit content over the internet.

[6] An IP address is a unique numerical label assigned to each device in a network that uses IP to transmit content.

[7] This look-up process is known as domain name service, or DNS.

2

options offered by the 3CM service in order to create a Virtual Private Network (VPN),[8] which it utilized to direct its end-users to www.aol.com. The VPN provided "tunnels" from Level 3's modem bank through Level 3's IP network infrastructure to an AOL datacenter. This "tunneling" prevents an AOL end user from accessing internet content without first visiting www.aol.com.

The Pennsylvania Department of Revenue (Department) audited Level 3's sales for the period of January 1, 2000 through April 30, 2003. During the audit period, Level 3 sold its 3CM service to AOL and other retail ISPs. Level 3 did not collect or remit sales and use tax on its sale of 3CM to retail ISPs during the audit period. Following the audit, the Department issued a sales and use tax assessment of $2,939,985.56. Level 3 appealed the assessment to the Board, which reduced the assessment to $2,331,481.07. The Department and Level 3 have reached an agreement disposing of $1,330,050.07 of the assessed tax, leaving only $1,001,431 at issue in this proceeding. The remaining tax assessment pertains to Level 3's sales of 3CM to AOL. Thus, Level 3's sales of 3CM to AOL are the only sales at issue in this appeal.

On appeal to this Court,[9] Level 3 argues that the 3CM service sold to AOL constitutes internet access and is, therefore, exempt from sales and use tax

---

[8] A VPN is a private network configured within a public network.

[9] This Court's review of an appeal from the Board is *de novo*. *AOL/Sprint*, 932 A.2d at 335 n.7. A stipulation of facts is binding and conclusive on this Court, but we draw our own legal conclusions from those facts. *Concentric Network Corp. v. Commonwealth*, 897 A.2d 6, 8 n.2 (Pa. Cmwlth. 2006) (en banc), *aff'd*, 922 A.2d 883 (Pa. 2007) (per curiam). Although we hear appeals from the Board in our appellate jurisdiction, this Court essentially functions as a trial court. *Id.*

3

under the Pennsylvania Tax Code (Tax Code)[10] and the federal Internet Tax Freedom Act (ITFA).[11]  The Commonwealth, relying heavily on this Court's decision in *America Online, Inc. v. Commonwealth*, 932 A.2d 332 (Pa. Cmwlth. 2007) (*AOL/Sprint*), *aff'd*, 963 A.2d 903 (Pa. 2008), argues that the 3CM service sold to AOL is a basic telecommunications service and is, therefore, subject to tax.[12]

Section 202 of the Tax Code, 72 P.S. § 7202, imposes a sales and use tax on purchases of tangible personal property sold within the Commonwealth. "Tangible personal property" includes "interstate telecommunication service originating or terminating in the Commonwealth and charged to a service address in this Commonwealth."  Section 201 of the Tax Code, 72 P.S. § 7201(m). "Telecommunications service," as defined in Section 201(rr) of the Tax Code, 72 P.S. § 7201(rr), includes:

---

[10] Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101-10004.

[11] Pub. L. No. 105-277, Div. C, Title XI, §§ 1100-1104, 112 Stat. 2681-719 (1998) (current version at 47 U.S.C. § 151).

[12] To the extent this Court is asked to interpret the relevant portions of the Tax Code, we note that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly."  1 Pa. C.S. § 1921(a).  "The clearest indication of legislative intent is generally the plain language of a statute."  *Walker v. Eleby*, 842 A.2d 389, 400 (Pa. 2004).  "When words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."  1 Pa. C.S. § 1921(b).  A court must read the sections of a statute together, and construe them to give effect to all of the statute's provisions.  1 Pa. C.S. § 1921(a); *Roethlein v. Portnoff Law Assocs., Ltd.*, 81 A.3d 816, 822 (Pa. 2013).  "In addition to these basic principles of statutory construction, we note that it is equally well-settled that taxing statutes are to be strictly construed against the Commonwealth, and any reasonable doubt as to their construction or application must be resolved in favor of the taxpayer."  *PPL Holtwood, LLC v. Pike Cnty. Bd. of Assessment*, 846 A.2d 201, 206 (Pa. Cmwlth.), *appeal denied*, 860 A.2d 491 (Pa. 2004).

Any one-way transmission or any two-way, interactive transmission of sounds, signals, or other intelligence converted to like form, which effects or is intended to effect meaningful communications by electronic or electromagnetic means via wire, cable, satellite, light waves, microwaves, radio waves, or other transmission media. The terms include all types of telecommunication transmissions, such as local, toll, wide-area or any other type of telephone service . . . . The term does not include any of the following:

. . . .

(3) Charges for access to the Internet. Access to the Internet does not include any of the following:

. . . .

(B) Telecommunication services purchased by an Internet service provider to deliver access to the Internet to its customers.

"Telecommunications service" is also defined in the Department's Policy Statement 60.20 to include "all types of telecommunications transmissions," but explicitly excludes "enhanced telecommunications services." 61 Pa. Code § 60.20(a). "Enhanced telecommunications services" is defined in the Policy Statement as:

(i) Services, offered over a telecommunications network, which employ computer processing applications that include one or more of the following:

(A) Acts on the format, content, code, protocol or similar aspects of the purchaser's transmitted information.

(B) Provides the purchaser additional, different or restructured information.

(C) Involves the purchaser's interaction with stored information.

(ii) Examples of enhanced telecommunications services include electronic publishing, Internet access, voice mail and electronic mail services. Services utilizing any of the computer processing applications in subparagraph (i)

5

solely for the management, control or operation of a telecommunications system or the management of a telecommunications service is not an enhanced telecommunication service.

61 Pa. Code § 60.20(a).

In *AOL/Sprint*, AOL sought a refund of sales and use tax it had paid on purchases of port modem management (PMM) services from Sprint Corporation (Sprint). The PMM service was described as follows:

> A customer's dial-up access begins with the computer modem attached to the customer's computer. . . . The modem attached to the customer's computer dials a telephone access number associated with a business local exchange service line that Sprint obtains from a local exchange carrier. . . .
>
> The exchange service line connects to a bank of AOL service modems physically located at premises controlled and managed by Sprint. The modems are tangible personal property leased by AOL from third party leasing companies. The bank of modems at the Sprint premises convert the analog signal coming in from the exchange service line into a digital signal, which is then transmitted over Sprint's data network to the computers located in the AOL data center.

*AOL/Sprint*, 932 A.2d at 334.

AOL argued that the PMM services were enhanced telecommunications services because they changed the format of information from analog to digital, interacted with stored information, and interacted with computer processing applications. This Court rejected AOL's arguments, holding that the PMM service

> meet[s] the definition of taxable telecommunications services in as much as Sprint's management and operation of the AOL ports/modems is just one of the purposes for which AOL uses Sprint services. AOL purchased the Sprint services to assemble and manage a collection of hardware, software and telecommunications

6

> services that transport data to and from its data center to AOL's members.

*Id.* at 337.

Here, the Commonwealth argues that the 3CM service serves the same purpose and function as the PMM service in *AOL/Sprint*, and that the 3CM service is, therefore, a taxable telecommunication service as well. The Commonwealth acknowledges the technical differences between Sprint's network in *AOL/Sprint* and Level 3's network here, but argues that these differences are irrelevant. We disagree. In *AOL/Sprint*, the analog call traveled along Sprint's lines to AOL service modems physically located at premises controlled and managed by Sprint. The AOL modem performed the analog to digital conversion, and the digital signal was transmitted over Sprint's data network to the hardware located in the AOL datacenter. Sprint provided dedicated private line channels created using Time Division Multiplexing (TDM)[13] technology. Here, by contrast, the analog call travels over Level 3's lines to a Level 3-owned and operated facility. This facility contains modems, a network access point and network access servers—"hardware that resides in the Level 3 Gateway into which ISP end-users

---

[13] TDM is a

> telecommunication transmission protocol in which a large bandwidth digital transmission facility is shared among a number of individual telecommunications channels through the assignment of fixed or synchronous "time slots" at designated intervals. . . . Because individual TDM time slots are assigned to the exclusive use of a specific telecommunications channel, if there is no traffic to be transmitted at the time that the time slot becomes available to the designated channel, the timeslot goes unused and its capacity cannot be transferred to another channel or use.

(Resp't Br. Appx. B.)

7

dial to get access to the [i]nternet.  This equipment converts dial-up calls to IP."
((3)ConnectModem Product Guide, p.5.)  Level 3 then transmits the digital signal
over its IP network to the requested IP address.  Level 3 uses Packet Switching[14]
and VPNs to deliver end-users to the AOL datacenter.

As this brief recitation demonstrates, there are fundamental
technological differences between Sprint's PMM service and Level 3's 3CM
service.  *AOL/Sprint*, therefore, is not controlling in this case.  Furthermore, these
technological differences are material.  The Level 3 facility, as the point at which
the end-user connects with the network access point and network access servers, is
a Point of Presence (PoP)—"an access point, location or facility that connects to
and helps other devices establish a connection with the [i]nternet."  (Resp't Br.
Appx. B.)   Because the Level 3 facility is a PoP, it is where the end-user's
connection to the internet begins.  The 3CM service, therefore, constitutes internet
access—a service "furnished via an arrangement of physical transmission, routing
and switching facilities that utilize the TCP/IP protocol suite and that provide
connectivity between individual end-user[s] . . . and the . . . [i]nternet."  (Resp't Br.
Appx. B.)  To the extent the Commonwealth argues that the 3CM service was not

---

[14] Packet Switching is a

> telecommunications protocol in which a small quantity of
> information is encapsulated in a virtual envelope or "packet"
> where it is routed intact to the "address" specified on the "header"
> of the packet.  Packet capacity is assigned only as needed to
> support a particular transmission demand; thus, if a user is not
> sending traffic, the capacity can be made available to another user
> or for another purpose.

(Resp't Br. Appx. B.)  Packet switching is replacing TDM as a newer, more efficient protocol.
(*Id.*)

internet access because it always delivered AOL's end-users to www.aol.com first, we find this unpersuasive for two reasons: (1) delivering an end-user to www.aol.com as a homepage is no different than delivering an end-user to www.msn.com or www.google.com; and (2) a skilled end-user could hack the AOL software and direct that a different homepage be used, bypassing the mandatory stop at www.aol.com and demonstrating that it is not necessary for an AOL end-user to visit www.aol.com in order to access the internet. (*See* Rebuttal Report of William H. Lehr, Expert Report submitted on behalf of Level 3, p. 8.)

The fact that Level 3's 3CM service provides internet access is dispositive. Internet access is an enhanced telecommunications service. 61 Pa. Code § 60.20(a). As an enhanced telecommunications service, it is excluded from the definition of telecommunications services. *Id.* Because the 3CM service is not a telecommunications service, it cannot fall under the exception in Section 201 of the Tax Code, allowing taxes on "telecommunication services purchased by an Internet service provider to deliver access to the Internet to its customers." 72 P.S. § 7201(rr)(3)(B). Thus, the 3CM service is exempt from tax as internet access under Section 201 of the Tax Code, 72 P.S. § 7201(rr)(3).[15]

---

[15] Because our determination that the 3CM service is internet access under the Tax Code is dispositive, we need not address the remaining arguments.

For the reasons discussed above, the order of the Board is hereby reversed.[16]

                                             _____

                                             P. KEVIN BROBSON, Judge

---

[16] Also before this Court is the Commonwealth's motion for reconsideration of this Court's April 30, 2015 order denying the Commonwealth's petition to strike Level 3's reply brief as untimely. This Court concluded that the Commonwealth's brief was not properly served and that, consequently, Level 3's reply brief was not untimely. We perceive no error with this decision, and the Commonwealth's motion for reconsideration is hereby denied.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Level 3 Communications, LLC,      :
                      Petitioner    :
                                  :
        v.                   :    No. 166 F.R. 2007
                                  :
Commonwealth of Pennsylvania,  :
                      Respondent  :

# **O R D E R**

AND NOW, this 15th day of October, 2015, the order of the Board of Finance and Revenue is hereby REVERSED. The Commonwealth's motion for reconsideration is DENIED.

Unless exceptions are filed within 30 days pursuant to Pa. R.A.P. 1571(i), this order shall become final.

<br>

_____
P. KEVIN BROBSON, Judge