J-A12007-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| IBEW, LOCAL 98, ROBERT BARK AND ROBERT THOMPSON | : | IN THE SUPERIOR COURT |
| | : | OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES BATTLE, JEANETTE BATTLE, | : | No. 2713 EDA 2022 |
| ADMINISTRATOR | : | |
| WWW.THETRUTHABOUTYOURLOCAL.COM | : | |
| WWW.TRUTHABOUTYOURLOCAL.COM | : | |
| COMMENT, | : | |
| WWW.THETRUTHABOUTYOURLOCAL.COM | : | |
| WWW.TRUTHABOUTYOURLOCAL.COM | : | |

Appeal from the Order Entered September 29, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at No(s):
200701106

BEFORE:  OLSON, J., NICHOLS, J., and COLINS, J.

MEMORANDUM BY OLSON, J.:                    **FILED MAY 7, 2024**

Appellants, IBEW, Local 98, Robert Bark, and Robert Thompson, appeal from the order entered on September 29, 2022, which granted the motion for summary judgment filed by Charles Battle and Jeanette Battle ("the Battle Defendants") and dismissed Appellants' complaint.  We vacate and remand.

Appellants commenced this defamation action on July 17, 2020, by filing a *praecipe* for a writ of summons against the Battle Defendants and certain anonymous, Doe defendant commenters (hereafter "Doe defendant commenters") on the websites known as www.thetruthaboutyourlocal.com

and www.truthaboutyourlocal.com ("the Websites"). *See* Appellant's *Praecipe* to Issue Writ of Summons, 7/17/20, at 1-4. Within Appellants' later-filed complaint, Appellants named, as defendants, the Battle Defendants and the anonymous, Doe defendant commenters on the Websites. Appellants' Complaint, 8/20/20, at 1.

In their complaint, Appellants averred that the Battle Defendants are the creators and administrators of the Websites. *Id.* at ¶ 5. According to Appellants, the Websites solicited comments from users and "assur[ed] would-be commenters that the identities of any who posted would remain anonymous." *Id.* at ¶ 12. Appellants claimed that anonymous commenters wrote "several false and defamatory statements about Local 98 and its officers," including Appellant Robert Bark ("Appellant Bark") and Appellant Robert Thompson ("Appellant Thompson"), on the Websites. *Id.* at ¶ 14.

Within their complaint, Appellants reiterated the alleged defamatory statements that the anonymous commenters wrote on the Websites. Regarding Appellant Bark, the comments allegedly:

a. "Falsely represent[ed] he committed a crime" by declaring:

> Dude! I was on the job today and [a person] told me Local 98 Business Agent Booby Bark showed up at a members house on the front lawn and threatened him! What the F%#$! I knew Barkie was dum just not stupid. He better get a lawyer. What a dumb ass! Is this where our local is going! I am hearing Federal charges are coming….

b. "Falsely accus[ed] him of a crime" by declaring:

> Barkie you better get a lawyer. You crossed the line this time. Federal intimidation charges.

c. "Falsely represent[ed] he used extortion to sell tickets to a function" by declaring:

> Hey Barkie didn't you tell me that if I didn't buy a ticket to the Land down under party at Your buddy Scott "KEENANS" place for 35 cash, that I would never get a job from John again?
>
> Even after I told you it was my kids birthday that day! Just ASKING! Turn about is fair play.

d. "Falsely represent[ed] he is an alcoholic with an extensive DUI history" by declaring:

> Barkie is too busy tying on a load. How many DUI's are we up too now?

e. "Falsely accus[ed] him of rigging the results of a Local 98 election through unlawful acts of intimidation" by declaring:

> Bobby Bark . . . intimidated potential candidates into not going thru with the nomination process.

f. "Falsely represent[ed] that he is an unfit father" by declaring:

> Happy Fathers day Bark. Oh wait do you even see or interact with your kids any more? From what I hear they hate your guts. Hope you have a great Father's Day by yourself loser

*Id.* at ¶ 15.

Regarding Appellant Thompson, the comments allegedly:

a. "Falsely represent[ed] that he hires, with the approval of Local 98's other leaders, non-Union workers for his personal business" by declaring:

> Is this the roofer Bobby Thompson uses? I heard he goes to non-union job sites to hire contractors for his house flipping

- 3 -

business. ALL NON UNION of course…. He's making a fortune off of the local You can't make this shit up. They Must have pictures of the 3rd district Vice President fucking chickens or something. SMH.

b. "Falsely represent[ed] he fraudulently misappropriates wages from Local 98 by pursuing personal financial opportunities during Union working hours" by declaring:

> Bobby Thompson, is rumored to be our Business Representative trying to secure fair working and standards on all job sites but his own. With the permission of the Business Manager Bob hires Mexicans to dig out basements and non union contractors to renovate flip houses while charging his time to the Local Union.

*Id.* at ¶ 16.

According to the complaint, "[a]s officers of Local 98, the above-quoted false and defamatory representations posted about [Appellants Barker and Thompson], while allegedly acting in their capacity as representatives of the Union, reflect on and have equally harmed the reputation and business standings of Local 98 in the community." *Id.* at ¶ 17. Further, Appellants claimed, anonymous comments directly defamed Local 98 by:

a. Falsely contending Local 98 is "Fucking Doc Nazis;"

b. Falsely representing that Local 98 "[n]ow [] employ[s] crooks;"

c. Falsely disparaging Local 98 members as "South Philly Thugs;"

d. Falsely representing that Local 98 discriminates against minorities (Local 98 "wouldn't let a man of color in [its] house" and ". . . doesn't understand that we are all human");

e. Falsely vilifying Local 98's leadership as the "thief team;"

f. Falsely representing that a longstanding Local 98 Business Representative ". . . stole 240k from the financial office;"

g. Falsely representing that Local 98 encourages and condones election results obtained through unlawful intimidation and fear ("If there were ever a fair election where candidates could be nominated without intimidation and voters could vote without fear [Local 98's present leadership] would be on the out of work list" and Local 98 leaders including ". . . Bark and others intimidated potential candidates into not going thru with the nomination process . . . really you had to get ed off his couch to intimidate his own nephew PATHETIC");

h. Falsely representing that the work environment at Local 98 condones "rape" of female journeymen by its officials ("It's hard to be a woman trades member. Do you want to know how hard? [Former Union official] raped me in 2002. I'm going to tell my story").

*Id.* at ¶ 18.

Appellants claimed that the Battle Defendants and the anonymous, Doe defendant commenters "collaborated and conspired to author and post [the] false and defamatory statements," knew that the above statements were false, and are all liable for the harm caused by their alleged defamatory statements. *See id.* at ¶¶ 15, 16, 18, 29 and "Wherefore" Clause.

On September 16, 2020, the Battle Defendants filed preliminary objections to Appellants' complaint. Within these preliminary objections, the Battle Defendants requested that Appellants' complaint be stricken because: 1) "the complaint fails to separately allege or identity the specific acts of the Battle Defendants that serve as the basis for [Appellants'] claims against them . . . [and thus] fails to provide the Battle Defendants with clear and definite

information concerning the nature and foundation of the claims against them;" 2) the federal Communications Decency Act, 47 U.S.C. § 230, "provides the Battle Defendants with immunity against [Appellants'] defamation claim;" 3) Appellants "fail[ed] to adequately plead their defamation claim against the Battle Defendants;" and 4) certain statements "are not capable of a defamatory meaning." The Battle Defendants' Preliminary Objections, 9/16/20, at 5-33.

The trial court overruled the Battle Defendants' preliminary objections on December 3, 2020, without providing a legal reason or explanation for its order. *See* Trial Court Order, 12/3/20, at 1.

On December 22, 2020, the trial court entered the governing case management order, which declared that all discovery in this case must be completed no later than May 2, 2022 and all pre-trial motions must be filed no later than July 4, 2022. Case Management Order, 12/22/20, at 1.

On February 26, 2021, Appellants filed a "Motion for an Order Directing the Disclosure of Doe Defendants' Identities" ("Appellants' First Discovery Motion"). Within this motion, Appellants requested that the trial court "direct the disclosure, pursuant to [*Pilchesky v. Gatelli*, 12 A.3d 430 (Pa. Super. 2011)[1]], of the identities of the author(s) of [13] false and defamatory

---

[1] As *Pilchesky* held, when a defamation plaintiff seeks a discovery order to provide them with the identities of anonymous or pseudonymous internet posters, four requirements must be met: 1) "[t]he reviewing court must ensure that the John Doe defendant receives proper notification of a petition
*(Footnote Continued Next Page)*

comments posted on" the Websites. Appellants' First Discovery Motion, 2/26/21, at 1.

Appellants' First Discovery Motion noted that, within the Battle Defendants' answer to the complaint, Defendant Charles Battle admitted he was the administrator of the Websites. *Id.* at ¶ 16. According to Appellants, Defendant Charles Battle "therefore knows the identity of, or has access to information sufficient to learn the identity of, each anonymous poster who is responsible for each statement" posted on the Websites. *Id.* at ¶ 17. Thus, Appellants requested that the trial court order Defendant Charles Battle "to identify each such poster, or supply all information in his possession pertaining or related to each poster's identity." *Id.* at ¶ 18.

On April 8, 2021, the trial court denied Appellants' First Discovery Motion, without prejudice, "because [Appellants] failed to establish the necessary factors as set forth in *Pilchesky*." Trial Court Order, 4/8/21, at 1.

On April 26, 2021, Appellants filed a "Motion for Leave to Conduct Discovery Related to the Identities of Unknown Defendants" ("Appellants'

to disclose his identity and a reasonable opportunity to contest the petition;" 2) "[e]very plaintiff who petitions the court to disclose the identity of an anonymous or pseudonymous communicator must present sufficient evidence to establish a *prima facie* case for all elements of a defamation claim, within the plaintiff's control, such as would survive a motion for summary judgment;" 3) "[a] petitioner must submit an affidavit asserting that the requested information is sought in good faith, is unavailable by other means, is directly related to the claim and is fundamentally necessary to secure relief;" and, 4) "[t]he court must expressly balance the defendant's First Amendment rights against the strength of the plaintiff's *prima facie* case." *Pilchesky*, 12 A.3d at 442-445 (emphasis omitted).

Second Discovery Motion"). Within this motion, Appellants again requested that the trial court compel the Battle Defendants "to provide [Appellants] with the identities, or information related to the identities, of the authors of the false and defamatory comments posted on" the Websites. Appellants' Second Discovery Motion, 4/26/21, at ¶ 22. In the alternative, "to the extent the Battle Defendants credibly lack information related to the identities of the anonymous [Doe defendant commenters]," Appellant sought "leave pursuant to [Pennsylvania Rule of Civil Procedure 2005[2]] to issue subpoenas in aid of discovery of the identities of the individuals responsible for the defamatory postings identified in the complaint on the Internet Service Providers who issued the IP addresses to the anonymous commenters at the times the comments were posted." *Id.* at ¶ 23.

_____

[2] Rule 2005(f) declares:

> No subpoena in aid of discovery relating to a defendant identified by a Doe designation may be issued or be served without leave of court upon motion stating with particularity from whom information is sought and how the discovery will aid in identification of the unknown defendant. In deciding the motion, the court shall weigh the importance of the discovery sought against unreasonable annoyance, embarrassment, oppression, burden, or expense to any person or party from whom the discovery is sought, and prejudice to any person or entity suspected of being the unknown defendant. Leave to serve a subpoena in aid of discovery does not preclude a challenge to the subpoena by the person or entity served.

Pa.R.C.P. 2005(f).

The trial court denied Appellants' Second Discovery Motion on June 14, 2021. Within the trial court's accompanying opinion, the trial court explained that it denied the motion because "[t]he evidence provided by [Appellants] . . . is insufficient to show [Defendant Charles Battle] has the ability to adequately provide notice to the anonymous commenters that their anonymity is at risk of being removed." Trial Court Opinion, 6/14/21, at 7. The trial court reasoned:

> In **Pilchesky**, [the cross-plaintiff who wished to compel the disclosure of the anonymous internet commenters] provided the court with evidence showing how the anonymous commenters posted the allegedly defamatory statements – 1) they had to create a registered user profile which entailed providing identifying information to the website administrator, and 2) only after they had created such a profile, the anonymous commenter could post messages, all of which were tied to the registered username. In contrast, [Appellants] herein have never explained to [the trial court] the method by which comments are posted to the websites run by [Defendant Charles Battle]. In **Pilchesky**, [the cross-plaintiff] advised the trial court that Pilchesky maintained a list that contained identifying information for each registered user; [Appellants] herein have not made a similar representation.
>
> [Appellants'] motion alleges [Defendant] Charles Battle can contact the individual commenters through a message board, but [Appellants] fail to explain to [the trial court] how this would be accomplished. Does the message board have a private messenger function? Is there a chat room function in the message board? Can the administrator contact commenters via email? [Appellants'] motion also avers [Defendant] Charles Battle may contact the commenters "by using . . . other identifying information readily accessible to him as website Administrator," but fails to explain the nature of the identifying information.

**Id.** at 6-7 (citations and some capitalization omitted).

The trial court thus denied Appellants' Second Discovery Motion without prejudice. *Id.* at 7.

Appellants filed their third discovery motion on September 29, 2021. This motion, entitled "Motion for Leave to Conduct Discovery Related to the Identities of Unknown Defendants Pursuant to Pa.R.C.P. 2005 and *Pilchesky*" ("Appellants' Third Discovery Motion"), expressly sought to rectify the trial court's concerns that were identified in its June 14, 2021 opinion. *See* Appellants' Third Discovery Motion, 9/29/21, at ¶ 25.

Initially, Appellants' motion noted that Appellants "have obtained the individual IP addresses associated with each of the subject Internet postings."[3] *Id.* at ¶ 35. Appellants sought "leave pursuant to Pa.R.C.P. 2005 to issue subpoenas in aid of discovery of the identities of the individuals responsible for the [allegedly] defamatory postings identified in the complaint on [each Internet Service Provider ("ISP")] who issued the IP addresses to the anonymous commenters at the times the comments were posted."[4] *Id.* at ¶ 25. Appellants further proposed that the trial court "direct each ISP, upon identifying the subscribers associated with each IP address, to notify each

---

[3] As our Commonwealth Court has explained: "IP, short for Internet Protocol, is the principal communications protocol used to transmit content over the internet." *Level 3 Commc'ns, LLC v. Com.*, 125 A.3d 832, 833 n.5 (Pa. Cmwlth. 2015). "An IP address is a unique numerical label assigned to each device in a network that uses IP to transmit content." *Id.* at 833 n.5.

[4] "A retail ISP sells internet access to an end-user, such as a residential customer." *Level 3 Commc'ns*, 125 A.3d at 833 n.3.

subscriber of [Appellants'] request and provide them with copies of this petition and the [trial court's] accompanying order directing each poster to file objections, if any, to [Appellants'] petition within [ten] days." *Id.* at ¶ 36.

Appellants next sought to address the remaining three *Pilchesky* factors. As to the requirement that Appellants "present sufficient evidence to establish a *prima facie* case for all elements of a defamation claim, within the plaintiff's control, such as would survive a motion for summary judgment," Appellants first declared that the "statements at issue are categorically false." *Id.* at ¶ 38. As evidence of falsity, Appellants noted that Appellant Bark, Appellant Thompson, and Jack O'Neill, general counsel to Appellant Local 98, all verified the complaint and attested to the falsity of the statements recounted therein. *Id.* at ¶¶ 13, 15, and 17. Further, Appellants contended:

> the defendants' statements [] include false imputations of immorality and the commission of crimes, which are *per se* defamatory, and require no further evidence of actual damages, which are presumed in such cases. [Also, the trial court] already decided the issue in overruling the [Battle Defendants' preliminary] objections by order of December 3, 2020, [Appellants'] *prima facie* burden has been conclusively met.

*Id.* at ¶ 39 (citations omitted).

The third *Pilchesky* factor requires that the petitioner "submit an affidavit asserting that the requested information is sought in good faith, is unavailable by other means, is directly related to the claim and is fundamentally necessary to secure relief." *Pilchesky*, 12 A.3d at 444-445. Regarding this factor, Appellants submitted an affidavit from their trial

counsel, asserting "that the information sought by this petition is fundamentally necessary to secure relief in this case, and sought in good faith." Appellants' Third Discovery Motion, 9/29/21, at ¶ 40.

The final **Pilchesky** factor requires that the court "balance the defendant's First Amendment rights against the strength of the plaintiff's *prima facie* case." **Pilchesky**, 12 A.3d at 442-445. As to this factor, Appellants again declared that the anonymous comments consist of "false imputations of immorality and the commission of crimes, which are *per se* defamatory and not subject to First Amendment protections." Appellants' Third Discovery Motion, 9/29/21, at ¶ 43.

The trial court denied Appellants' Third Discovery Motion on February 4, 2022, without providing an explanation for its order. Trial Court Order, 2/4/22, at 1.

After the trial court denied Appellants' Third Discovery Motion, the Battle Defendants filed a motion for summary judgment. Within their summary judgment motion, the Battle Defendants noted that Appellants "have never sought to test the Battle Defendants' defenses by serving discovery on, or taking [the] depositions of, Mr. and Mrs. Battle" and that the governing case management order established a discovery deadline of May 2, 2022. The Battle Defendants' Motion for Summary Judgment, 7/5/22, at 14. As a result, the Battle Defendants claimed that Appellants do not possess any facts that the Battle Defendants "acted with the degree of fault required" to hold them liable for defamation or that the anonymous statements were published to

anyone. *Id.* Further, the Battle Defendants claimed, Appellants neither pleaded nor possess facts that would "support the proposition that the Battle Defendants' supposed publication caused [Appellants] actual harm." *Id.* at 17 (quotation marks and emphasis omitted).

Appellants filed a response in opposition to the Battle Defendants' summary judgment motion and argued that the motion must be denied because they have not been provided the "identities of the authors of the [anonymous] statements at issue" and, thus, discovery is still outstanding, and because "each of the statements is capable of a defamatory meaning and plainly concerns" Appellants. Appellants' Answer in Opposition, 8/4/22, at 6-11.

On September 28, 2022, the trial court granted the Battle Defendants' motion for summary judgment and dismissed Appellants' complaint with prejudice. Trial Court Order, 9/28/22, at 1. Within the trial court's later-filed opinion, the trial court noted that it did not rule on Appellants' three prior discovery motions (rather, two other judges ruled on the motions) and that the trial court would thus "not interfere with the decision of two judges of concurrent jurisdiction." Trial Court Opinion, 1/4/23, at 5 (some capitalization omitted). Further, since Appellants' "sole contention of error regarding the [motion for summary judgment] relates to the *Pilchesky* rulings by judges of concurrent jurisdiction," the trial court concluded that summary judgment was proper. *Id.* (some capitalization omitted).

Appellants filed a timely notice of appeal and raise two claims to this Court:

> 1. Whether the trial court abused its discretion and/or committed an error of law by rejecting Appellants' proposal for notification under ***Pilchesky v. Gatelli***, 12 A.3d 430 (Pa. Super. 2011), in denying leave to conduct necessary discovery to ascertain the [identity] of individuals who posted defamatory postings online?
>
> 2. Whether the trial court abused its discretion and/or committed an error of law by awarding summary judgment relief against Appellants when discovery material to the disposition of [Appellants'] discovery motion remained outstanding?

Appellants' Brief at 5.

Pennsylvania Rule of Civil Procedure 1035.2 provides:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> > (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
> >
> > (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2.

Rule 1035.2(2) thus permits the filing of a summary judgment motion "after the completion of discovery relevant to the motion." Pa.R.C.P. 1035.2(2). As the explanatory comment to the rule declares:

> [w]hile Rule 1035.2(2) is prefaced with the statement that any party may file a motion after the relevant pleadings have closed, the adverse party must be given adequate time to develop the case and the motion will be premature if filed before the adverse party has completed discovery relevant to the motion. The purpose of the rule is to eliminate cases prior to trial where a party cannot make out a claim or a defense after relevant discovery has been completed; the intent is not to eliminate meritorious claims prematurely before relevant discovery has been completed.

Pa.R.C.P. 1035.2 cmt.

Our scope and standard of review of an order granting a summary judgment motion has been stated by this Court:

> Our scope of review of a trial court's order granting . . . summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.
>
> Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

*Englert v. Fazio Mech. Servs., Inc.*, 932 A.2d 122, 124 (Pa. Super. 2007) (internal citations omitted); *see also Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010) ("an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard

- 15 -

of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals").

First, Appellants claim that the trial court erred when it denied their discovery motions, where they sought to uncover the identities of the individuals who posted the anonymous, online comments.

Pennsylvania Rule of Civil Procedure 2005 "provide[s] a procedural mechanism to substitute the actual name of a Doe-designated defendant where the action has been filed within the limitations period and the defendant has been adequately described in the complaint to demonstrate that it was that defendant against whom the action was asserted." Pa.R.C.P. 2005 cmt. (emphasis omitted). In relevant part, Rule 2005 declares:

> No subpoena in aid of discovery relating to a defendant identified by a Doe designation may be issued or be served without leave of court upon motion stating with particularity from whom information is sought and how the discovery will aid in identification of the unknown defendant. In deciding the motion, the court shall weigh the importance of the discovery sought against unreasonable annoyance, embarrassment, oppression, burden, or expense to any person or party from whom the discovery is sought, and prejudice to any person or entity suspected of being the unknown defendant. Leave to serve a subpoena in aid of discovery does not preclude a challenge to the subpoena by the person or entity served.

Pa.R.C.P. 2005(f).

The case at bar not only concerns a Doe defendant, but it also concerns the First Amendment right to speak anonymously on the Internet. ***See*** ***McIntyre v. Ohio Elections Comm'n***, 514 U.S. 334, 342 (1995) ("an

- 16 -

author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment"). In *Pilchesky*, this Court announced certain procedural safeguards that we deemed "necessary to ensure the proper balance between a speaker's right to remain anonymous and a defamation plaintiff's right to seek redress." *Pilchesky*, 12 A.3d at 442. Specifically, the *Pilchesky* Court held, before a trial court may issue a discovery order that provides a defamation plaintiff with the identities of anonymous or pseudonymous internet posters, the trial court must address the following four requirements: first, "[t]he reviewing court must ensure that the John Doe defendant receives proper notification of a petition to disclose his identity and a reasonable opportunity to contest the petition;" second, "[e]very plaintiff who petitions the court to disclose the identity of an anonymous or pseudonymous communicator must present sufficient evidence to establish a *prima facie* case for all elements of a defamation claim, within the plaintiff's control, such as would survive a motion for summary judgment;" third, "[a] petitioner must submit an affidavit asserting that the requested information is sought in good faith, is unavailable by other means, is directly related to the claim and is fundamentally necessary to secure relief;" and, fourth, "[t]he court must expressly balance the defendant's First Amendment rights against the strength of the plaintiff's *prima facie* case." *Pilchesky*, 12 A.3d at 442-445 (emphasis omitted).

In the case at bar, the trial court denied Appellants' Third Discovery Motion without providing any explanation for its order and without addressing any of the **Pilchesky** factors. Further, as this case stands, the trial court has never addressed whether Appellants' proposed notification procedure in its Third Discovery Motion was adequate, the trial court has never ruled on whether any of the contested statements are capable of a defamatory meaning,[5] the trial court has never ruled on whether Appellants presented "sufficient evidence to establish a *prima facie* case for all elements of [their] defamation claim," and the trial court has never "expressly balance[d] the defendant's First Amendment rights against the strength of the plaintiff's *prima facie* case." **See id.**; **see also Kurowski v. Burroughs**, 994 A.2d 611, 616 (Pa. Super. 2010) ("[i]t is the function of the trial court to determine, **in**

---

[5] Appellants claim in their brief that, when the trial court denied their Second Discovery Motion, the trial court "accept[ed] that three of the four **Pilchesky** factors were met." Appellant's Brief at 18. This statement is not true. When the trial court denied Appellant's Second Discovery Motion, it did so on the lone, conclusive ground that Appellants' proposed notification procedure was inadequate. Trial Court Opinion, 6/14/21, at 5-7. The trial court made no ruling whatsoever on the remaining three **Pilchesky** factors. **See id.**

In like fashion, Appellants claimed at the trial level that, when the trial court overruled the Battle Defendants' preliminary objections, the trial court necessarily concluded that the alleged defamatory statements were actionable. **See** Appellants' Third Discovery Motion, 9/29/21, at ¶ 39. Again, Appellants' statement is untrue. As explained above, the trial court overruled the Battle Defendants' preliminary objections without providing any explanation or legal reasoning. Thus, as far as we can discern from the record, the trial court's ruling might have been based upon a procedural irregularity, rather than upon the substance of the preliminary objections.

**the first instance**, whether the communication complained of is capable of defamatory meaning") (emphasis added) (quotation marks and citations omitted). Given that the trial court's granting of summary judgment was specifically based upon the denial of Appellants' Third Discovery Motion – and, since the trial court erroneously denied Appellants' Third Discovery Motion without addressing any of the *Pilchesky* factors on any of the alleged defamatory statements, we must vacate the trial court's order granting summary judgment, vacate the order denying Appellants' Third Discovery Motion, and remand for further proceedings. *See Pilchesky*, 12 A.3d at 442-446 (vacating the trial court's order and remanding for further proceedings, in part, because the trial court failed to "focus on [the plaintiff's] duty to produce *prima facie* evidence of actual harm" and because the trial court "did not conduct a balancing test in this case").

Summary judgment order vacated. Order denying Appellants' Third Discovery Motion vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/7/2024